**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **G&H DIVERSIFIED** | § | |
| **MANUFACTURING, LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 3:20-cv-00376** |
| **DYNAENERGETICS EUROPE GMBH,** | § | |
| and **DYNAENERGETICS US, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |

---

**PLAINTIFF G&H DIVERSIFIED MANUFACTURING, LP'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER TO THE WESTERN DISTRICT OF TEXAS**

---

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

LEGAL AUTHORITY ............................................................................................... 6

ARGUMENT .............................................................................................................. 7

    I.    The SDTX Action is the First-Filed Lawsuit ................................................ 7

    II.    Regardless of Whether this is the First Filed Case, Compelling
    Circumstances Require Adjudication of This Action in the Southern
    District of Texas ......................................................................................... 14

        A.    All Private Interest Factors Provide Compelling Evidence Against
        Dismissal and Transfer ................................................................... 15

        i.    The Relative Ease of Access to Sources of Proof Weighs against
        Dismissal ...................................................................................... 15

            a)    Evidence from G&H .......................................................... 16

            b)    Evidence from Third-Party Prior Art Inventors ............................... 17

            c)    Evidence from DynaEnergetics ........................................... 18

        ii.  The Availability of Compulsory Process to Secure Attendance of
        Witnesses Weighs against Dismissal. ........................................... 20

        iii. The Cost of Attendance for Willing Witnesses Weighs against Dismissal.
        .......................................................................................... 22

        iv. All Other Practical Problems that Make Trial of a Case Easy, Expeditious,
        and Inexpensive Weigh against Dismissal. .............................................. 23

        B.    The Public Interest Factors Provide Further Compelling
        Evidence ......................................................................................... 26

        i.    Southern District of Texas' Localized Interest Weighs against Dismissal
        and Transfer. ................................................................................ 26

ii.  Administrative Difficulties Related to Court Congestion Is Likely Neutral. ........................................................................................ 27

iii. The Remaining Public Interest Factors are Neutral. ............................... 28

C.  The First-to-File Rule Cannot Overcome the Compelling Circumstances ........................................................................................................... 29

CONCLUSION ............................................................................................... 30

CERTIFICATE OF SERVICE ........................................................................ 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013).......................................................................7, 11

*Bennett v. Moran Towing Corp.*,
   181 F. Supp. 3d 393 (S.D. Tex. 2016)............................................................................22

*Brocq v. Lane*,
   2017 WL 1281129 (N.D. Tex. Apr. 6, 2017) ................................................................11

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) .........................................................................................10

*Davies Innovations Inc. v. Strum, Ruger & Company, Inc.*,
   2016 WL 8114127 (S.D. Tex. July 31, 2016) ...............................................................16

*Elecs. For Imaging, Inc. v. Coyle*,
   394 F.3d 1341 (Fed. Cir. 2005) .......................................................................................6

*Emerson Process Mgmt. LLLP v. Wetro Lan, LLC*,
   2015 WL 11438109 (W.D. Tex. Sept. 2, 2015) ......................................................10, 29

*Flores v. Cameron County*,
   92 F.3d 258 (5th Cir. 1996) .............................................................................................8

GeoTag, Inc. v. Starbucks Corp.,
   2013 U.S. Dist. LEXIS 58575 (E.D. Tex. Jan. 14, 2013).............................................22

*Hart v. Donostia LLC*,
   290 F. Supp. 3d 627 (W.D. Tex. 2018) .......................................................................6, 7

*Hoffman v. Blaski*,
   363 U.S. 335 (1960)...................................................................................................7, 11

*In re Acer America Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) .....................................................................................26

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ...............................................................................16, 18

iv

*In re BigCommerce, Inc.*,
   890 F.3d 978 (Fed. Cir. 2018) ................................................................... 24

*In re Echostar Corp.*,
   388 Fed. Appx. 994 (Fed. Cir. 2010)......................................................... 14

*In re EMC Corp.*,
   501 Fed. Appx. 973 (Fed. Cir. 2013).......................................................... 7

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ..........................................................passim

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ................................................................. 27

*In re SK Hynix Inc.*,
   2021 WL 733390 (Fed. Cir. Feb. 25, 2021) ........................................ 24, 25

*In re Telebrands Corp.*,
   773 Fed. Appx. 600 (Fed. Cir. 2016).......................................................... 13

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ................................................................. 27

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .........................................................passim

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,
   665 F.3d 371 (5th Cir. 2011) .................................................................. 11

*JPT Group, LLC v. Balenciaga and Balenciaga America, Inc.*,
   2017 WL 570959 (S.D. Tex. Feb. 10, 2017) ............................................. 19

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
   342 U.S. 180 (1952)................................................................................. 7, 10

*Kilbourne v. Apple Inc.*,
   2018 WL 3957864 (S.D. Tex. July 27, 2019) ........................................... 16

*Krupski v. Costa Crociere S.p.A.*,
   560 U.S. 538 (2010)..................................................................................... 9

*Lugo v. Geo Group, Inc.*,
  2017 WL 1807678 (S.D. Tex. May 5, 2017)................................................................21

*Mann Mfg., Inc. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) .........................................................................................6

*Marines v. UPS Ground Freight, Inc.*,
  2009 WL 10670173 (W.D. Tex. Sept. 8, 2009) ...........................................................22

*Mission Insurance Co. v. Puritan Fashions Corp.*,
  706 F.2d 599 (5th Cir. 1983) ...........................................................................6, 7, 30

*Odom v. Microsoft Corp.*,
  596 F. Supp. 2d 995 (E.D. Tex. 2009)..........................................................................27

*Optic153 LLC v. Thorlabs Inc.*,
  2020 WL 3403076 (W.D. Tex. June 19, 2020) ............................................................25

*Redline v. Starnet Ins. Co.*,
  2018 WL 8755739 (S.D. Tex. Mar. 30, 2018) .............................................................21

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997) ...................................................................................23

*Save Power Ltd. v. Syntek Finance Corp.*,
  121 F.3d 947 (5th Cir. 1997) ........................................................................................11

*Serco Services Co., L.P. v. Kelley Co., Inc.*,
  51 F.3d 1037 (Fed. Cir. 1995) ................................................................................7, 29

*Stonite Prods. Co. v. Melvin Lloyd Co.*,
  315 U.S. 561 (1942).......................................................................................................23

*Strangent, LLC v. Pioneer Elecs. (USA) Inc.*,
  2013 WL 8467476 (E.D. Tex. May 8, 2013)................................................................21

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
  137 S. Ct. 1514 (2017)....................................................................................................4

*USPC Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*,
  2011 WL 1103372 (N.D. Tex. Mar. 25, 2011).............................................................27

*Van Dusen v. Barrack,*
376 U.S. 612 (1964) ........................................................................... 24

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24,*
751 F.2d 721 (5th Cir. 1985) ............................................................. 6

*Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc.,*
2020 WL 1289563 (E.D. Tex. Mar. 18, 2020) ............................... 10

*Wells Fargo Foothill, Inc. v. Schmidt, Westgard & Company, PLLC,*
2009 WL 10705026 (N.D. Tex. Nov. 4, 2009) ............................... 22

**Other Authorities**

28 U.S.C. § 1404(a) ................................................................... 6, 24

28 U.S.C. §§ 1400(b) ..................................................................... 25

35 U.S. Code § 271(a) ..................................................................... 12

35 U.S. Code § 271(b) ....................................................................... 3

35 U.S. Code § 271(c) ....................................................................... 3

35 U.S.C. § 102(a)(1) ....................................................................... 17

Fed. R. Civ. P. 15(c)(1)(C)(ii) ..................................................... 8, 28

Fed. R. Civ. P. 45(c)(1) ................................................................... 21

**INTRODUCTION**

Defendants DynaEnergetics US, Inc. and DynaEnergetics Europe GmbH (collectively, "DynaEnergetics") argue that this case should be dismissed, or alternatively transferred, because of a pending case that it has filed in the Western District of Texas. Defendants' motion fails for two principal reasons.

First, the case pending in the Western District of Texas is not the first-filed action. As explained in this response, DynaEnergetics' lawsuit in the Western District of Texas accused a different defendant—Yellow Jacket Oil Tools, LLC—and *not* Plaintiff G&H Diversified Manufacturing, LP ("G&H"). Indeed, after G&H filed this instant lawsuit in the Southern District of Texas, DynaEnergetics' own lawyers unambiguously stated that it was "abundantly clear that DynaEnergetics accused Yellow Jacket Oil Tools, LLC, *not G&H*, of infringing the '697 Patent." *See* Ex. A. However, after Yellow Jacket Oil Tools, LLC moved to dismiss the Western District of Texas action for improper venue—putting the pendency of that case in jeopardy—DynaEnergetics suddenly reversed course and amended its complaint to add G&H as a defendant. As a result, the Southern District of Texas case is the first-filed action, and the Court should reject DynaEnergetics' belated (and inadequate) attempt to salvage venue in a different lawsuit.

Second, given that both G&H and DynaEnergetics are headquartered here in the Southern District of Texas, compelling circumstances dictate that this case should remain here. All of Plaintiff's documents, employees, and manufacturing related to the product-at-issue are located in this District. Numerous third-party prior art inventors are located

1

here in the Southern District of Texas and outside the subpoena power of the Western District. The cost of attending trial for all parties favors the Southern District of Texas, and this District has a greater interest in resolving this dispute because it is where the parties and their products are based. In fact, DynaEnergetics' U.S. headquarters is located right here in this District, and DynaEnergetics has sued multiple other parties in the Southern District of Texas for infringing the same patent-at-issue. Put simply, this lawsuit properly belongs here in the Southern District of Texas. Under these facts, the Court should reject DynaEnergetics' attempt to transfer the case to a venue that is farther away from the parties and their relevant witnesses and evidence.

## FACTUAL BACKGROUND

On September 11, 2020, DynaEnergetics sent a letter addressed to "Jimmy Kash, President, Yellow Jacket Oil Tools, LP"[1] accusing "your company" of infringing U.S. Patent No. 10,844,697 ("the '697 Patent") by "making, using, importing, and/or selling perforating guns and equipment in the United States," identifying the "PreWired Perf Gun" as an example." Ex. E at 55-56. Subsequently, on November 24, 2020, DynaEnergetics filed suit in the Western District of Texas against "Yellowjacket Oilfield Services, LLC" of infringing the '697 Patent. *See DynaEnergetics Europe GmbH v. Yellowjacket Oilfield Services*, Case No. 6:20-cv-1082 at Dkt. 1 (W.D. Tex. Nov. 24, 2020).

One week later, on December 4, 2020, DynaEnergetics realized that it had filed suit against the wrong party and dismissed the case against Yellowjacket Oilfield Services. *Id.*

---

[1] Jimmy Kash is the president of both G&H and Yellow Jacket Oil Tools, LLC.

2

at Dkt. 14. That same day, DynaEnergetics filed a virtually identical complaint in the Western District of Texas against Yellow Jacket Oil Tools, LLC ("Yellow Jacket LLC"), accusing the "YJOT Pre-Wired Perforating Gun" (the "Accused Product"). *See* Ex. E at ¶ 7, Complaint, *DynaEnergetics Europe GmbH v. Yellow Jacket Oil Tools, LLC*, Case No. 6:20-cv-01110 at Dkt. 1 (W.D. Tex. Dec. 4, 2020) ("the WDTX Action"). However, Yellow Jacket LLC does not make, use, import or sell the Accused Product referenced in DynaEnergetics' letter and lawsuit, nor does Yellow Jacket LLC have any business operations related to the Accused Product.[2] In fact, the evidence that DynaEnergetics refers to for proof that Yellow Jacket LLC is involved in the Accused Product is G&H's own website (and not Yellow Jacket LLC's). Ex. E at 50; Ex. F at 32-33, Motion to Dismiss, *DynaEnergetics Europe GmbH v. Yellow Jacket Oil Tools, LLC* , Case No. 6:20-cv-01110-ADA at Dkt. 16 (W.D. Tex. Jan. 29, 2020). It is G&H, and not Yellow Jacket LLC, that designed, makes and sells the Accused Product.[3]

---

[2] In order to be liable for patent infringement, a defendant must "makes, use[], offer[] to sell, or sell[]" a patented invention (35 U.S. Code § 271(a)), or induce infringement of a patent (35 U.S. Code § 271(b)), or "offer[] to sell or sell[] . . . or import[] . . . component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use" (35 U.S. Code § 271(c). Yellow Jacket LLC has nothing to do with the accused product, and to be clear, does not make, use, offer to sell, or sell the product or any component of the product that is at issue in the patent infringement case.
[3] G&H markets its perforating gun products under the brand name "Yellow Jacket Oil Tools." Ex. F at 15. However, that brand name is not owned or operated by Yellow Jacket Oil Tools, LLC, which is an unused affiliate. *Id*. at 14-15.

Accordingly, because Yellow Jacket LLC is not the proper party to an infringement suit—and because the Western District of Texas lacks venue over Yellow Jacket LLC—G&H filed this lawsuit in the Southern District of Texas for declaratory judgment of noninfringement on December 14, 2020 ("the SDTX Action"). G&H chose to file its lawsuit in the Southern District of Texas because the Accused Product is designed, developed, and manufactured in this District and because it is where both G&H and DynaEnergetics are headquartered, and it is where G&H's research, development and manufacturing operations are located. *See* Ex. 1, Decl. of John Kaiser; Ex. B, DynaEnergetics Website; Ex. C at ¶ 2, Amended Complaint, *DynaEnergetics Europe GmbH v. Yellow Jacket Oil Tools, LLC*, Case No. 6:20-cv-01110 at Dkt. 17 (W.D. Tex. Feb. 12, 2021).

On December 29, 2020, in response to this lawsuit, DynaEnergetics sent G&H a letter reiterating that it was ***not*** involving G&H in the WDTX Action, but rather ***only*** Yellow Jacket LLC:

> To the extent it wasn't already abundantly clear that DynaEnergetics accused Yellow Jacket Oil Tools, not G&H, of infringing the '697 Patent, the filing of the Yellow Jacket Suit eliminated any questions. Accordingly, we request that the G&H Suit be dismissed immediately, not only to avoid unnecessary motion practice, but to reduce the impact your filing will have on any exceptional case finding allowing DynaEnergetics to recover its fees and costs from your client.

Ex. A. On January 29, 2021, Yellow Jacket LLC filed a motion to dismiss the WDTX Action for lack of venue, under *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), because Yellow Jacket LLC does not have a "regular and established

place of business" anywhere in the WDTX nor has it committed acts of infringement in the district. *See* Ex. F at 4-10. In its motion to dismiss, Yellow Jacket LLC pointed out that it does not conduct any business *at all*. *Id.* at 5. Yellow Jacket LLC's motion to dismiss the WDTX Action highlighted, just as did G&H's own filing of the SDTX Action, that Yellow Jacket LLC is not the appropriate party to sue.

Realizing that it had a venue problem in the WDTX Action, and in a misguided effort to avoid the SDTX Action, DynaEnergetics subsequently amended its complaint on February 12, 2021 to add G&H to the WDTX Action. Ex. C. That very same day, DynaEnergetics moved to dismiss the SDTX Action or, in the alternative, transfer it to the Western District of Texas. Dkt. 16.

Despite the fact that Yellow Jacket LLC does not make, use, or sell the products it has accused in the WDTX Action, DynaEnergetics maintains that Yellow Jacket LLC is a proper party. Not only has DynaEnergetics refused to dismiss Yellow Jacket LLC from the WDTX Action despite lacking venue, but DynaEnergetics has also acknowledged that they may add Yellow Jacket LLC to this action:

> Defendants' Statement: Defendants may add Yellow Jacket Oil Tools, LLC as a counterclaim defendant in this action, and may also add one or more of Plaintiff's customers who have used the infringing products.

Joint Discovery and Case Management Plan, Dkt. 23 at 3-4.

## LEGAL AUTHORITY

Courts generally apply the rule favoring the forum of the first-filed case, "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005). The decisions facing the Court are the following. First, the Court must determine which action was first-filed. Second, the Court must determine whether the first-to-file rule applies by determining whether there is substantial overlap between the two filed lawsuits. *See W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985). Third, "[e]ven when two cases substantially overlap, however, courts may exercise their discretion and decline to apply the rule based on 'compelling circumstances.'" *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)).

To determine what constitutes "compelling circumstances," the Fifth Circuit has endorsed the use of the 28 U.S.C. § 1404(a) convenience factors. *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602-03 (5th Cir. 1983); *see Hart*, 290 F. Supp. 3d at 633. Section 1404(a) provides that a change of venue is necessary when appropriate for the convenience of the parties, as evaluated by the convenience factors. *See* 28 U.S.C. § 1404(a); *Mission*, 706 F.2d at 602-03.

The convenience factors are divided into private interest factors and public interest factors. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Id.* If the application of the convenience factors favors the second-filed forum, then the second-filed forum is the appropriate forum to litigate the case. *See Mission*, 706 F.2d at 602-603; *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995).

At the end of the day, "[t]he factors guiding the [first-to-file] rule's application are ultimately 'equitable in nature,' and lower courts are left an 'ample degree of discretion.'" *Hart*, 290 F. Supp. 3d at 630 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952)).

## ARGUMENT

### I.  The SDTX Action is the First-Filed Lawsuit

There is no dispute that DynaEnergetics' Amended Complaint adding G&H to the WDTX Action was filed and served well after the SDTX Action was commenced, and as such, it cannot be used to manufacture first-filed status as to G&H for several reasons. In evaluating a venue challenge, the court must do so based upon the circumstances that existed at the time of the filing of the case. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013); *Adaptix, Inc. v. HTC Corp.*,

937 F. Supp. 2d 867, 876 (E.D. Tex. 2013). At the time the SDTX Action was filed, G&H was not a party to the WDTX action.

Even if the Court looks to subsequent events, the filing date for the complaint against G&H should be treated as February 12, 2021 (second-filed), the date that the amended complaint was filed against G&H.   Ex. C. Without saying so explicitly, DynaEnergetics improperly treats its amended complaint as relating back to its original complaint. But the joinder of G&H does not relate back to the original filing date of the WDTX Action. Rule 15(c) states that an amended pleading relates back to the original pleading when "the party to be brought in by amendment . . . ***knew or should have known*** that the action would have been brought against it, ***but for a mistake concerning the proper party's identity***." Fed. R. Civ. P. 15(c)(1)(C)(ii). Here, Rule 15(c)(1)(C)(ii) is not met for at least two reasons.

First, "[n]otice is the critical element involved in Rule 15(c) determinations." *Flores v. Cameron County*, 92 F.3d 258, 273 (5th Cir. 1996). DynaEnergetics had notice and knew the correct parties for its lawsuit at the time it filed its original complaint in the WDTX Action (Dec. 4, 2020). The complaint cited to documents that show the Yellow Jacket Oil Tools brand is a division of G&H:

8



Ex. E at 50.

Second, DyanEnergetic's omission of G&H, and later addition of it as a party, was not the type of "mistake" that Rule 15 covers. For tactical reasons, perhaps a belief that it could better maintain venue in WDTX without G&H as a party, DynaEnergetics chose to sue Yellow Jacket LLC and refused to sue G&H. This is true even after (1) G&H filed the SDTX Action and (2) counsel for G&H represented that G&H was the proper party. Dkt. 1. In a calculated attempt to convince G&H to dismiss the SDTX Action, DynaEnergetics told G&H's lawyers that such an action would ***not*** be brought against G&H in the WDTX:

> To the extent it wasn't already abundantly clear that DynaEnergetics accused Yellow Jacket Oil Tools, not G&H, of infringing the '697 Patent, the filing of the Yellow Jacket Suit eliminated any questions. Accordingly, we request that the G&H Suit be dismissed immediately, not only to avoid unnecessary motion practice, but to reduce the impact your filing will have on any exceptional case finding allowing DynaEnergetics to recover its fees and costs from your client.

Ex. A. DynaEnergetics likewise deliberately did not add G&H even after G&H lawyers represented in a letter that "***G&H manufactures the accused perforating guns, sells and markets them*** under the brand name of Yellow Jacket Oil Tools." Ex. D at 2-3, January 26, 2021 Letter from Amir Alavi to Barry Herman. Only ***after*** Yellow Jacket LLC filed its motion to dismiss the WDTX Action for lack of venue did DynaEnergetics file an amended

9

complaint in that action to name G&H as a defendant. *Compare* Ex. F (filed Jan. 29, 2021) *with* Ex. C (filed Feb. 12, 2021). Notably, this amendment came two months[4] after G&H filed the SDTX Action and the very same day DynaEnergetics' response to Yellow Jacket LLC's motion to dismiss for lack of venue was due in the WDTX Action. It is not a "mistake" when a party makes a tactical decision to sue the wrong party—contrary to the information in its possession—and fails to add the right party after being told who that party is. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010); *see also Emerson Process Mgmt. LLLP v. Wetro Lan, LLC*, 2015 WL 11438109, at *1-2 (W.D. Tex. Sept. 2, 2015) (refusing to dismiss declaratory judgment action by manufacturer when patentee sued parent company of manufacturer in prior action and subsidiary in current action).

DynaEnergetics attempts to skirt Rule 15(c) by pointing to *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 184-86 (1952) and *Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc.*, 2020 WL 1289563 (E.D. Tex. Mar. 18, 2020), *denying mandamus*, 817 Fed. App'x 987 (Fed. Cir. 2020). Neither *Kerotest* nor *Wapp Tech* address the Rule 15(c) issue before this Court.

In *Wapp Tech*, the question before the court was whether the first-to-file rule was contingent upon a court possessing personal jurisdiction over the defendant. The court concluded that there is no jurisdictional precondition to the first-to-file rule, relying on *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999). The question before this Court is very different: can a tactical decision to not sue a defendant in the first instance

---

[4] *Compare* Dkt. No. 1 (filed on Dec. 14, 2020) *with* Ex. C (filed Feb. 12, 2021).

and then later add that defendant to the suit relate back to the original filing date? Under Rule 15(c), the answer is no. *Kerotest* is likewise distinguishable because the Supreme Court did not address any Rule 15(c) issue.

DynaEnergetics' inability to satisfy Rule 15(c) means DynaEnergetics cannot obtain the benefits of relation back to the original complaint through the addition of G&H to the WDTX Action, *Wapp Tech* and *Kerotest* do not change this.

However, even if the WDTX Action against G&H is accorded the filing date of DynaEnergetics original Complaint against Yellow Jacket LLC, this case should not be dismissed or transferred. The Court must determine if there is substantial overlap between the WDTX and SDTX Actions. To determine if substantial overlap exists, courts in the Fifth Circuit examine "whether 'the core issue was the same' or if 'much of the proof adduced would likely be identical.'" *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 371, 678 (5th Cir. 2011). The cases "must be 'more than merely related.'" *Brocq v. Lane*, 2017 WL 1281129, at *2 (N.D. Tex. Apr. 6, 2017). If overlap between the cases is less than complete, courts have looked to additional factors, such as the extent of overlap, the likelihood of conflict, and the comparative advantages and interests of each forum in resolving the dispute. *See Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947 (5th Cir. 1997).

The Court's substantial overlap analysis compares the two cases at the time each case was filed. *Adaptix, Inc.*, 937 F. Supp. 2d at 876 (citing *Blaski*, 363 U.S. at 343). When the WDTX Action was filed on December 4, 2020, DynaEnergetics alleged patent

infringement solely against Yellow Jacket LLC. Contrastingly, when the SDTX Action was filed on December 14, 2020, G&H sought a declaration that G&H did not infringe DynaEnergetics' '697 Patent. While, at the moment in time each case was filed, the WDTX and SDTX Actions both involved infringement of the '697 Patent, the core issues and proof vastly differed.[5]

In the WDTX Action, Yellow Jacket LLC was identified as the sole defendant and, since Yellow Jacket LLC does not design or develop any technology or manufacture or sell any products, the threshold issue of the WDTX Action is whether Yellow Jacket LLC "makes, uses, offers to sell, or sells" an infringing product as required under the 35 U.S. Code § 271(a). DynaEnergetics ignores this critical threshold question and instead leapfrogs the key issue to focus on patent infringement—"DynaEnergetics' first-filed Yellow Jacket lawsuit will ultimately result in the determination of infringement of the '697 Patent . . . ." Dkt. 16 at 9; *see id.* at 7-8. DynaEnergetics puts the cart before the horse. Proof in the WDTX Action will center around Yellow Jacket LLC's operations, its products, and its sales. In other words, whether Yellow Jacket LLC performs any of the actions which can give rise to liability under 35 U.S.C. § 271. Such proof is easily demonstrated because, as represented in Yellow Jacket LLC's motion to dismiss the WDTX Action, Yellow Jacket LLC does not conduct any business ***at all***. Ex. F at 6, 14-15. Given that threshold defense, it is likely that the case will be resolved on that issue and

---

[5] DynaEnergetics acknowledges that the substantial overlap test goes beyond the mere pleadings and looks at the "core issue" in the case. *See* Dkt. 16 at 7.

never reach the question of infringement, validity or damages that are present in a normal patent case.

Conversely, in the SDTX Action, G&H makes and sells the products that DynaEnergetics alleges infringe its '697 Patent. As such, the central issues to the SDTX Action will not involve whether G&H "makes, uses, offers to sell, or sells" the product at issue. *See* 35 U.S.C. § 271(a). Rather, the SDTX Action will involve focus on the scope of the '697 Patent's claims (claim construction), whether the '697 Patent is valid, whether the Accused Products infringe the '697 Patent, and what the damages should be for such infringement, if it exists.[6]

As illustrated in *Telebrands* and *Echostar*, the Court should deny DynaEnergetics motion on the basis the WDTX and SDTX Actions do not substantially overlap. In *In re Telebrands Corp.*, 773 Fed. Appx. 600 (Fed. Cir. 2016), the Federal Circuit denied a writ of mandamus on the basis the district court did not abuse its discretion when the court determined there was no substantial overlap between a first-filed case in New Jersey and a case later-filed in Texas. ZURU first filed a lawsuit in New Jersey for trade dress and trademark infringement, fraud, and copyright infringement against Telebrands. *Id.* at 601. Subsequently, ZURU filed suit in the Eastern District of Texas for patent infringement against Telebrands. *Id.* at 602. Telebrands moved to dismiss the case or transfer the case to New Jersey on the basis the New Jersey action was first-filed. *Id.* The district court

---

[6] G&H assumes that if this case proceeds DynaEnergetics will bring a counterclaim of infringement and that G&H will subsequently add an affirmative defense that the '697 Patent is invalid.

concluded that "the New Jersey court in all likelihood would not have to determine the validity of the patent and whether each claim limitation was met; and the Texas case would not require the court to determine most, if not all, of the issues present in the New Jersey action." *Id.* at 603. Similar to *Telebrands*, the WDTX Action will not have to determine the validity of the patent or construe its limitations nor will the SDTX have to determine whether G&H makes and sells the alleged infringing product. It does not matter "that there could be some overlap in the factual and legal issues." *Id.*

In a more extreme example, in *In re Echostar Corp.*, 388 Fed. Appx. 994 (Fed. Cir. 2010), the Federal Circuit denied a writ of mandamus on the basis the district court did not abuse its discretion when it determined there was no substantial overlap between a case first-filed in Delaware and a case subsequently filed in the Eastern District of Texas despite both lawsuits involving the very same patents. The district court denied dismissal or transfer to the first-filed venue in Delaware even though there was significant "overlap of validity, enforcement, and claim construction" between the two cases. The Federal Circuit refused the writ of mandamus challenging the district court's denial. Unlike *Echostar*, here there is a substantial likelihood that there will be no overlap in validity, enforcement, or claim construction because Yellow Jacket LLC does not have anything to do with the accused products. Thus, as the court did in *Echostar*, this Court should conclude there is no substantial overlap between the WDTX and SDTX Actions.

## II. Regardless of Whether this is the First Filed Case, Compelling Circumstances Require Adjudication of This Action in the Southern District of Texas

Separate and apart from the debate over first-filed status, the Court should deny DynaEnergetics' motion under the compelling circumstances exception to the first-to-file rule because consideration of the § 1404(a) convenience factors weigh strongly in favor of keeping this case in the SDTX. DynaEnergetics, of course, virtually ignores this issue in its motion, because when properly analyzed, both the private interest factors as well as the factors pertaining to SDTX's localized interests overwhelmingly establish compelling circumstances that dictate the Court not dismiss or transfer the SDTX Action.[7]

### A. All Private Interest Factors Provide Compelling Evidence Against Dismissal and Transfer

#### i. The Relative Ease of Access to Sources of Proof Weighs against Dismissal

All relevant evidence is located in the SDTX and, therefore, this factor weighs decisively against dismissal and transfer. As detailed below, key relevant evidence from third parties is located in the SDTX. Additionally, relevant evidence from G&H is located in the SDTX. Nearly all relevant evidence possessed by DynaEnergetics is located in either Houston, Texas; Canada; Germany; or United Arab Emirates. A dismissal or transfer to

---

[7] DynaEnergetics did not identify witnesses or other factors related to the on the § 1404 convenience factors in its opening brief as required under LR 7.7. Despite that fact, G&H has investigated the venue facts, including reviewing and attaching a declaration DynaEnergetics filed in a motion to transfer a Colorado case, in order to address these factors in full. Ex. J, *PerfX Wireline Services, LLC v. DynaEnergetics US, Inc. et al*, Case No. 20-cv-03665-MEH at Dkt. 25-2 (D. Colo. Feb. 12, 2021). Therefore, to the extent that DynaEnergetics attempts to submit new evidence on the § 1404 convenience factors in its reply brief, the Court should not entertain such late-filed evidence as it violates the local rule and would be prejudicial to G&H.

the WDTX will make access to the relevant sources of proof *more inconvenient*. As a result, this first factor weighs heavily against transfer.

### a) Evidence from G&H

G&H has extensive ties to the SDTX. G&H's headquarters is in Houston, Texas. Ex. 1 at ¶5 (Decl. of John Kaiser). Of G&H's 245 employees, 238 of them work in Houston, Texas. *Id.* at ¶6. All of the research, design, development, and manufacturing associated with the Accused Product take place in Houston, Texas. *Id.* at ¶11. All potentially relevant documents related to the research, design, development, and manufacturing of the Accused Product are located in Houston, Texas. *Id.* at ¶16. All employees involved in the development of the Accused Product and employees that otherwise have relevant knowledge about the research, design, development, and manufacturing are located in the SDTX. *Id.* at ¶¶ 2, 15, 17-20. G&H's employees likely to be called as witnesses, CFO John Kaiser and engineers Ryan Ward and Benjamin Knight, are located in the Houston area. Ex. 1 at ¶ 2, 18-19. G&H has not identified any likely witnesses who are not located in the SDTX. *Id.* No relevant documents or anticipated witnesses are located in the WDTX. *Id.* at ¶23.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the [accused infringer's] documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see JPT Group*, 2017 WL 570959, at *2; *Kilbourne v. Apple Inc.*, 2018 WL 3957864, at *2 (S.D. Tex. July 27, 2019) (Atlas, J.); *In re Apple Inc.*, 979 F.3d

1332, 1340 (Fed. Cir. 2020); *Davies Innovations Inc. v. Strum, Ruger & Company, Inc.*, 2016 WL 8114127, at *3 (S.D. Tex. July 31, 2016). As the accused infringer, proper venue is where G&H's documents and witnesses reside—the SDTX.

For the above reasons, the relative ease of access to sources of proof weighs heavily in favor of the SDTX and against dismissal and transfer.

### b) Evidence from Third-Party Prior Art Inventors

As detailed below in Section ii, G&H has identified seven inventors of two prior art references who are based in the SDTX. *See* Ex. P, U.S. Pat No. 10,077,641; Ex. Q, U.S. Pat. Pub. No. 2016/0084048. In addition to the written prior art, the Schlumberger Fractal and Safe Jet systems, which are both related to these two patents, is a potential invalidating system under at least 35 U.S.C. § 102(a)(1) and § 103. These inventors, as well as other witnesses at Schlumberger, possess relevant information on patents and systems that invalidate the '697 Patent. While it is not a typical practice to call prior art inventors to trial in a patent case, this case differs because the Schlumberger Fractal and Safe Jet systems are invalidating systems. The inventors on the patent and other Schlumberger witnesses in the SDTX are probable trial witnesses to testify as to how the prior art systems worked, as well as to public availability of the systems. As a result, documents relating to the design and development of the prior art will be found in the SDTX or elsewhere outside of Texas (California, Canada, and India).[8] Transferring this case to the WDTX will make it more

---

[8] *See infra. p. 20 citing* Ex. G.

difficult, if not impossible, to access those sources of proof—especially since **none** of the identified prior art inventors reside within the WDTX.

### c)  Evidence from DynaEnergetics

It is telling that DynaEnergetics did not address any of the "compelling circumstances" factors in their motion to dismiss. Presumably, this is because DynaEnergetics' U.S. headquarters is located in Houston, Texas. Ex. C at ¶ 2. And, because DynaEnergetics' other offices are located in Alberta, Canada; Troisdorf, Germany; and Abu Dhabi, UAE or are merely manufacturing facilities that are not home to any relevant documents or witnesses. *See* Ex. B; Ex. C at ¶ 2. Despite the fact that a majority of DynaEnergetics' employees with relevant knowledge are based either in the SDTX or outside of the United States, DynaEnergetics seeks to have this case tried in the WDTX. For example, DynaEnergetics' Director of Finance, Vice President of Product Management and Marketing, Vice President of Business Development, VP of North and South America Sales, and accounting staff are all located in Houston. Ex. 2, Decl. of Steven Jugle at ¶ 10; Ex. H at 1, 9, 19, 25 and 28.

Perhaps the most important witnesses employed by DynaEnergetics, the inventors named on the '697 Patent, are located outside of the U.S. *See* Ex. I ('697 Patent); Ex. J at ¶ 15.[9] Therefore, the location of these witnesses is completely neutral. *Genentech*, 566 F.3d

---

[9] Of the five inventors listed on the '697 Patent, only two are currently employed by DynaEnergetics: Thilo Scharf and Liam McNelis.  Ex. J at ¶ 15.

at 1344 (concluding that little weight, if any, should be given to the travel of foreign witnesses since they will have to travel a great distance no matter the venue).

With regard to the location of documents, DynaEnergetics would be hard pressed to explain why the WDTX provides greater ease of access to the relevant documents in DynaEnergetics' possession when DynaEnergetics' U.S. headquarters is located in Houston, Texas—right in the heart of the SDTX. Ex. C at ¶ 2. Hence, the SDTX has greater access to relevant documents and the WDTX has no apparent connection to this case. *See In re Apple*, 979 F.3d 1332, 1340-41 (Fed. Cir. 2020) (concluding the NDCA is the more appropriate venue because "Apple stores a significant amount of relevant information in NDCA," and, as the accused infringer, the place where the accused infringer's documents are kept weighs in favor of transfer to that location).

As an example, in *JPT Group, LLC v. Balenciaga and Balenciaga America, Inc.*, 2017 WL 570959, at *3 (S.D. Tex. Feb. 10, 2017), the court concluded that the relative ease of access to proof favored venue in New York because: (1) defendant's U.S. headquarters and principle place of business were in New York; (2) defendant's U.S. management, executive, advertising, marketing, wholesale, and retail distribution, along with the support personnel were located in New York; (3) defendant's records are located in New York; and (4) defendants' current and former employees with relevant knowledge resided in New York. Accordingly, *JPT Group* instructs that this case should remain in the SDTX. DynaEnergetics' U.S. headquarters and principal place of business is in the SDTX; DynaEnergetics' U.S. management, as well as its financial, marketing, and product

19

management functions are primarily located at its headquarters in the SDTX; and DynaEnergetics' records are located at its headquarters in the SDTX or elsewhere outside of the WDTX.[10] Not only is this true for DynaEnergetics, but, as discussed above, it is also true for G&H, which bolsters the SDTX as the proper venue for this action.

### ii. The Availability of Compulsory Process to Secure Attendance of Witnesses Weighs against Dismissal.

G&H has identified at least seven third-party prior art inventors with highly relevant knowledge of the prior art and system art to the '697 Patent who live and work in the Houston area. The three inventors located outside of the SDTX do not reside within the WDTX. The two prior art references are (1) U.S. Patent No. 10,077,641 ("Rogman") and (2) U.S. Patent No. 2016/0084048 ("Harrigan"), which relate to systems developed by Schlumberger known as Fractal and Safe Jet. *See* Ex. P; Ex. Q. For both patents, none of the potential witnesses reside in the WDTX and the majority reside in the SDTX:

| Rogman Patent<br>* Harrigan Patent | | |
|---|---|---|
| **Southern District of Texas** | Out-of-State | Western District of Texas |
| Allan Goldberg (Alvin, TX)* | Raphael Rogman (CA)* | |
| Roman Munoz (Houston, TX) | Vinod Chakka (India)* | **N** |
| Richard Lee Warns (Houston, TX)* | Pedro Hernandez (Canada)* | **O** |
| Hao Liu (Missouri City, TX)* | | **N** |
| Marcos Calderon (Rosharon, TX) | | **E** |
| Edward Harrigan (Richmond, TX)* | | |
| Kenneth Randall Goodman (Richmond, TX) | | |

---

[10] The parties have yet to serve Rule 26(f) disclosures nor has any other discovery occurred. As such, G&H is basing this information on publicly available information.

Ex. 2, Decl. of Steven Jugle at ¶ 9; Ex. G at 1, 14, 18, 24, 30, 35, 43, 58, 68, and 76.

Unlike patent and publication prior art, factual testimony regarding the functionality and public availability of system prior art will likely be necessary for G&H's invalidity defense. As a result of these witnesses' locations, only the SDTX has compulsory subpoena power to compel the majority of these witnesses to testify at trial. On the other hand, none of these inventors are within the subpoena power of the WDTX. As third parties, the inventors can only be subpoenaed if they reside within 100 miles of the courthouse or will not incur substantial expense. *See* Fed. R. Civ. P. 45(c)(1). The WDTX Action is in Waco, Texas which is over 100 miles from where each of the inventors reside.  Ex. 2, Decl. of Steven Jugle at ¶ 9; Ex. G at 12, 16, 22, 28, 33, 41, 56, 66, 74, and 78. Additionally, given the nature of a patent trial, the uncertainty of when witnesses will testify, and the distance from the Houston area to the Waco area, the attendance of the inventors at trial in the WDTX would be significantly cost prohibitive. *See Lugo v. Geo Group, Inc.*, 2017 WL 1807678, at *2-3 (S.D. Tex. May 5, 2017) (holding witnesses would incur a substantial expense where the witnesses would have to travel from Abilene, TX to Corpus Christi, TX and incur travel, meal, and lodging expenses); *Redline v. Starnet Ins. Co.*, 2018 WL 8755739, at *2-3 (S.D. Tex. Mar. 30, 2018) (holding witnesses would incur a substantial expense when witnesses would be required to travel from Amarillo, TX to Houston, TX).

To date, the parties have not exchanged disclosures or conducted discovery, but, upon information and belief, DynaEnergetics cannot identify any meaningful number of witnesses located in the WDTX. This is significant, because courts repeatedly refuse to

give weight to any witnesses who are not specifically identified in opening transfer motions. *Strangent, LLC v. Pioneer Elecs. (USA) Inc.*, 2013 WL 8467476 (E.D. Tex. May 8, 2013) (giving no weight to unidentified witnesses); *Bennett v. Moran Towing Corp.*, 181 F. Supp. 3d 393, 399-400 (S.D. Tex. 2016) (same); *Wells Fargo Foothill, Inc. v. Schmidt, Westgard & Company, PLLC*, 2009 WL 10705026, at *1 (N.D. Tex. Nov. 4, 2009) (same); *Marines v. UPS Ground Freight, Inc.*, 2009 WL 10670173, at *7 (W.D. Tex. Sept. 8, 2009) (same).

Additionally, this factor is neutral with respect to the inventors listed on the '697 Patent who are no longer employed by DynaEnergetics, Frank Preiss, Eric Mulhern, and David Parks, because they are located outside of the United States. *Genentech*, 566 F.3d at 1344; Ex. J at ¶ 15.

For these reasons, the compulsory process to secure the attendance of witnesses weighs heavily in favor of the SDTX and against dismissal and transfer. *See GeoTag, Inc. v. Starbucks Corp.*, 2013 U.S. Dist. LEXIS 58575, at *21 (E.D. Tex. Jan. 14, 2013) ("Accordingly, transfer is heavily favored when the majority of the non-party witnesses reside in the transferee forum.")

### iii. The Cost of Attendance for Willing Witnesses Weighs against Dismissal.

A vast majority, if not all, of the potential witnesses in this case are based in either the SDTX or outside of the United States. The Fifth Circuit has adopted a "100 mile rule" to assist with the analysis of this factor. *See In re Volkswagen AG*, 371 F.3d 201, 204-05 (Fed. Cir. 2004). When more than 100 miles separates the current venue from the proposed

venue, the inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled. *Id.* The known, available party and third-party witnesses reside in the SDTX and, therefore, a trial in the SDTX is clearly more convenient than in the WDTX, which would compel the witnesses to travel well over the 100 miles.

For the remaining out-of-state witnesses, the travel to the SDTX is just as, if not more, convenient as travel to the WDTX. And, to the extent any of the remaining witnesses are foreign witnesses, the Federal Circuit has explained that little weight should be given to the convenience of foreign witnesses since they "will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1344.

Given that G&H's witnesses are located in the SDTX, the third-party witnesses that G&H is most likely to call at trial—should they be deemed "willing" witnesses—are located in the SDTX, and the vast majority, if not all, of DynaEnergetics' witnesses are located in the SDTX or are foreign witnesses, the cost of attendance for willing witnesses weighs heavily against dismissal and transfer.

### iv. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive Weigh against Dismissal.

The fourth factor—the presence of other practical problems—include problems that "are rationally based on judicial economy." *See In re Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). Judicial economy will not be served by dismissal or transfer. In order for venue to be proper, venue must be established as to **each** defendant. *See Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563-64 (1942). DynaEnergetics cannot

23

establish venue over Yellow Jacket LLC in the WDTX because it does not have any facilities, employees, operations, or sales in the WDTX (or anywhere else).[11] The *only* district in which venue exits for Yellow Jacket LLC is the SDTX, because Yellow Jacket LLC's registered address is in Houston and hence Yellow Jacket LLC resides in Houston. Ex. L, Texas S.O.S. Business Organization Inquiry for Yellow Jacket Oil Tools, LLC; 28 U.S.C § 1400(b) (venue is proper where Defendant resides); *In re BigCommerce, Inc.*, 890 F.3d 978, 986 (Fed. Cir. 2018) (corporation resides in the judicial district "where it maintains a principal place of business, or, failing that, the judicial district in which its registered office is located."). And, DynaEnergetics has indicated in the Joint Discovery and Case Management Plan submitted to this Court that it may add Yellow Jacket LLC upon the denial of its motion:

> Defendants' Statement: Defendants may add Yellow Jacket Oil Tools, LLC as a counterclaim defendant in this action, and may also add one or more of Plaintiff's customers who have used the infringing products.

Dkt. 23 at 3-4. Hence, DynaEnergetics desire to sue Yellow Jacket LLC leads to only one logical conclusion: judicial economy is best served by keeping the action in the SDTX.

Moreover, under the first-to-file rule, a threshold question is whether this action could "have been brought" in the WDTX within the meaning of § 1404(a). *See In re SK Hynix Inc.*, 2021 WL 733390, at *2 (Fed. Cir. Feb. 25, 2021); *see also Van Dusen v.*

---

[11] For further detail on DynaEnergetics' inability to establish venue over Yellow Jacket Oil Tools, LLC in the WDTX *see* Ex. F, *DynaEnergetics Europe GmbH v. Yellow Jacket Oil Tools, LLC* , No. 6:20-cv-01110-ADA at Dkt. 16 (W.D. Tex. 2020).

*Barrack*, 376 U.S. 612, 616 (1964) (noting that the "transfer power is . . . expressly limited by the final clause of § 1404(a) restricting transfer to those federal districts in which the action 'might have been brought'"). Now that DynaEnergetics has represented to this Court that it may add Yellow Jacket LLC as a counterclaim defendant, it is clear that DynaEnergetics desires that Yellow Jacket LLC be a party regardless of whether G&H had filed this lawsuit here or in the WDTX. But Yellow Jacket LLC cannot be a party to any action in the WDTX. Given that Yellow Jacket LLC does not reside in the WDTX, committed no infringing acts in the WDTX, and has no business in the WDTX, Yellow Jacket LLC lacks the presence required by § 1400(b) in the WDTX. *See SK Hynix*, 2021 WL 733390 at *4.[12] Nor has Yellow Jacket LLC consented to the venue of the WDTX under §1404(a)—evidenced by Yellow Jacket LLC's motion to dismiss the WDTX Action. *Id.* at *5. Therefore, DynaEnergetics' insistence on including Yellow Jacket LLC in its patent infringement allegations requires this Court to deny DynaEnergetics' motion for failure to satisfy 28 U.S.C. §§ 1400(b), 1404(a).

Additional considerations related to efficiency are admittedly neutral in this case because there are patent infringement cases related to the '697 Patent all over Texas.

---

[12] DynaEnergetics bare allegation that Yellow Jacket Oil Tools, LLC is an "alter ego" of G&H, and therefore that venue for Yellow Jacket Oil Tools, LLC would be proper wherever it would be for G&H is insufficient. *See, e.g.*, *Optic153 LLC v. Thorlabs Inc.*, No. 6:19-cv-00667-ADA, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020) (Establishing that corporate entities have failed to observe corporate separateness is "a difficult standard to meet and requires proof that 'the corporations disregard their separateness and act as a single enterprise.'") (*citing Sovereign IP, LLC v. AT&T Inc.*, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017)).

25

However, and importantly, two other cases regarding infringement of the '697 Patent are pending in the SDTX: (1) *DynaEnergetics Europe GmbH et al. v. Vigor USA, LLC*, No. 4:21-cv-00283 and (2) *DynaEnergetics Europe GmbH et al. v. Nexus Perforating LLC*, No. 4:21-cv-00280. Considering that patent infringement cases related to the '697 Patent have been filed in the SDTX in combination with the facts detailed *supra*, judicial economy favors the SDTX.

In any light, this factor weighs against dismissal and transfer and certainly does not aid DynaEnergetics in overcoming its burden to show that dismissal or transfer is clearly more convenient.

**B. The Public Interest Factors Provide Further Compelling Evidence**

**i. Southern District of Texas' Localized Interest Weighs against Dismissal and Transfer.**

The localized interest factor pertains to a forum's "connections with the events that gave rise to th[e] suit." *In re Volkswagen*, 545 F.3d at 318. In fact, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighted in that venue's favor." *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). This suit relates to G&H's alleged infringement of the '697 Patent when it designed, developed, and manufactured its Accused Product.

G&H's design, development, and manufacture of the Accused Product have significant connections to the SDTX. G&H's headquarters and registered address is in Houston, Texas. Ex. 2 at ¶5; Ex. M. All of G&H's research, design, development, and manufacturing of G&H's Accused Product has taken place in Houston, Texas. *Id.* at ¶¶ 12-

26

13. All documents related to the research, design, development, and manufacturing of the Accused Product are located in Houston, Texas. *Id.* at ¶ 16. All employees involved in the development of the Accused Product and employees that otherwise have relevant knowledge related to the Accused Product are located in Houston, Texas. *Id.* at ¶¶ 2, 15, 17-20. Even G&H's U.S.-based marketing leadership and accounting and financial departments responsible for the Accused Product are located in Houston, Texas. *Id.* at ¶ 21.

The overwhelming number of events that gave rise to this suit—G&H's research, design, development, and manufacturing of the Accused Product—occurred in the SDTX. As a result, the SDTX has a stronger local interest than the WDTX. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (holding a venue's "interest in [a] matter is self-evident" when the alleged infringing product was developed and tested in the venue and the venue is where the relevant books and documents are maintained).

### ii. Administrative Difficulties Related to Court Congestion Is Likely Neutral.

It is unclear if court congestion weighs for or against dismissal or transfer in this case. In analyzing court congestion, "courts commonly consider the Federal Judicial caseload statistics." *USPC Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011). Court congestion can be measured by "whether a trial may be speedier in another court because of a less crowded docket." *Genentech*, 566 F.3d at 1347. The main consideration is not the time to trial for all cases, but rather the time to trial for patent cases. *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995,

1003 (E.D. Tex. 2009) (recognizing that this factor must be based on specific time to trial for patent cases and not all civil cases) (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319-20 (Fed. Cir. 2008)).

According to statistics from Lex Machina, patent cases filed in the WDTX over the last two-and-a-half years get to trial in a little less than 2 years. Ex. N at 1. The time to trial for patent cases in the SDTX is a little less than 3 years. Ex. O at 1. While these statistics show that patent cases generally get to trial faster in the WDTX, this is limited by a very small sample size—only 3 patent trials have occurred in the WDTX and 5 in the SDTX during this timeframe. Due to the limited sample size and the impact that COVID-19 will have on time to trial statistics, it is difficult to understand the significance of this factor. In any case, the convenience of the parties discussed *supra* outweigh any potential slight delay in getting this case to trial in the SDTX.

### iii.  The Remaining Public Interest Factors are Neutral.

The remaining public interest factors—conflicts of law and the courts' familiarity with patent law—are neutral. However, these factors are not irrelevant to the Court's analysis, because DynaEnergetics has the burden of demonstrating that the WDTX is *clearly* more convenient. For instance, if the Court determines that all of the factors are neutral, then dismissal or transfer is inappropriate. *Rmail Ltd. v. Amazon.com, Inc.*, 2011 WL 4591920, at *3 (E.D. Tex. Sept. 20, 2011) (denying motion to transfer where all factors were neutral); *see In re Volkswagen*, 545 F.3d at n. 10 ("Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into

account as it places a significant burden on the movant to show good cause for the transfer."). Therefore, factors that are neutral do not aid DynaEnergetics in overcoming their significant burden.

### C.  The First-to-File Rule Cannot Overcome the Compelling Circumstances

Under compelling circumstances similar to those present in this case, other courts have concluded that the second-filed forum is the appropriate forum to adjudicate the case. For example, in *Emerson Process Mgmt. LLLP v. Wetro Lan, LLC*, EPM brought a declaratory judgment action in the WDTX against Wetro seeking a declaration that its product did not infringe Wetro's patent. 2015 WL 11438109, at *1 (W.D. Tex. Sept. 2, 2015). Wetro moved to dismiss the action on the basis of a previously filed and then-pending patent infringement suit in the Eastern District of Texas ("EDTX"). However, Wetro's patent infringement suit was against EPM's parent company which had nothing to do with the production or marketing of the alleged infringing product, which was made and marketed by EPM. *Id.* The court denied Wetro's motion to dismiss because compelling circumstances overrode the first-to-file rule—namely, EPM's principal place of business was in the WDTX, EPM's witnesses resided in the WDTX, and Wetro could not identify material witnesses that resided in the EDTX. *Id.* at *1-2.

Similarly, in *Serco Services Co., L.P. v. Kelley Co., Inc.*, Serco filed a declaratory judgment action in the Northern District of Texas ("NDTX") against Kelley seeking injunctive relief against alleged patent infringement. 51 F.3d 1037, 1038 (Fed. Cir. 1995). Three days later Kelley filed a patent infringement suit in the Eastern District of Wisconsin

("EDWI"). Kelley then filed a motion to dismiss Serco's NDTX suit. The NDTX granted the motion to dismiss the first-filed case in favor of the second-filed EDWI forum because: "Kelley's witnesses were located in Wisconsin while Serco's were scattered throughout the country. Similarly, while some of Serco's documents were located at its Canadian headquarters, all of Kelley's documents were located in Wisconsin." *Id.* at 1040. The Federal Circuit affirmed the NDTX. *Id.*

Furthermore, in *Mission Insurance Co. v. Puritan Fashions Corp.*, Mission filed a declaratory judgment action in Texas federal court. 706 F.2d 599, 600-601 (5th Cir. 1983). Subsequently, Puritan filed suit in California state court for breach of contract. The district court in Texas dismissed the suit "in the interests of judicial economy and for the convenience of the parties and the witnesses." *Id.* at 602. Specifically, the district court noted, among other things, that key witnesses and the investigating FBI agents resided in California. *Id.* at 603.

The compelling circumstances in this case are far more convincing than those in *Emerson*, *Serco*, and *Mission*. On the facts before the Court, the Court should conclude that the first-to-file rule does not apply because of compelling circumstances.

## CONCLUSION

This case properly belongs here in the Southern District of Texas because this case is the first-filed case and, regardless of first-filed status, the compelling circumstances exception to the first-to-file rule applies. Accordingly, DynaEnergetics' motion to dismiss, or alternatively, to transfer should be denied in its entirety.

Dated: March 5, 2021                    Respectfully submitted,

                                        _/s/ Amir Alavi_____
                                        Amir Alavi, *Attorney-in-Charge*
                                        State Bar No.: 00793239
                                        Southern District ID No. 20910
                                        Todd Mensing
                                        State Bar No.: 24013156
                                        Southern District ID No. 302944
                                        Michael McBride
                                        State Bar No.: 24065700
                                        Southern District ID No. 3554928
                                        Colin Phillips
                                        State Bar No.: 24105937
                                        Southern District ID No. 3576569
                                        Joshua Wyde
                                        State Bar No.: 24060858
                                        Southern District ID No. 873284
                                        Steven Jugle
                                        State Bar No. 24083280
                                        Southern District ID No. 3633066
                                        Michael Killingsworth
                                        State Bar No. 24110089
                                        Southern District ID No. 3372610
                                        **AHMAD, ZAVITSANOS, ANAIPAKOS,
                                        ALAVI & MENSING P.C.**
                                        1221 McKinney Street, Suite 2500
                                        Houston, Texas 77010
                                        (713) 655-1101
                                        aalavi@azalaw.com
                                        tmensing@azalaw.com
                                        mmcbride@azalaw.com
                                        cphillips@azalaw.com
                                        jwyde@azalaw.com
                                        sjugle@azalaw.com
                                        mkillingsworth@azalaw.com

                                        **ATTORNEYS PLAINTIFF FOR G&H
                                        DIVERSIFIED MANUFACTURING, LP.**

31

## <u>CERTIFICATE OF COMPLIANCE WITH RULES</u>

     I hereby certify that Plaintiff's response motion complies with the rules required by Judge Jeffrey V. Brown in the Galveston Division of the Southern District of Texas.

*/s/ Amir Alavi*
Amir Alavi

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the March 5, 2021, a copy of the foregoing was served on the following party electronically through the U.S. District Court, Southern District of Texas ECF system to all counsel of record all of whom are Filing Users of the Court's Electronic Filing System.

*/s/ Amir Alavi*
Amir Alavi
