**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| G&H DIVERSIFIED MANUFACTURING, LP<br>    Plaintiff/Counterclaim-Defendant,<br><br>and<br><br>YELLOW JACKET OIL TOOLS, LLC<br>    Counterclaim-Defendant<br><br>    v.<br><br>DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC.,<br><br>    Defendant/Counterclaim-Plaintiffs. | Civil Action No: 3:20-CV-376 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR,
<u>ALTERNATIVELY, TO TRANSFER TO THE WESTERN DISTRICT OF TEXAS</u>**

## I.     INTRODUCTION

As explained in Defendants' (collectively, "DynaEnergetics") Motion to Dismiss (Dkt. 16), this action is simply an effort by G&H Diversified Manufacturing LP ("G&H") to change the forum for a patent infringement dispute that is *already pending* in the Western District of Texas ("WDTX") by attempting to avoid a straightforward application of the first-to-file rule. The WDTX has jurisdiction over this action, is home to the first-filed action, and there is substantial overlap between the WDTX and SDTX Actions. This is dispositive as to the relief requested.

G&H's attempt to overcome these clear facts in its Opposition (Dkt. 27) is premised on a multitude of dubious statements and assumptions that have no bearing on the proper analysis. *See* Section II.A.2. Even if a relation back analysis is relevant to the first-to-file rule, this is exactly the type of situation Rule 15(c) was intended to address and remedy; DynaEnergetics' claims against G&H relate back to the filing of the original complaint. *See* Section II.A.3. G&H has identified no compelling circumstances that can overcome the general rule favoring the forum of the first-filed case. *See* Section II.B. The first-filed WDTX Action takes precedence and this case should be dismissed.

## II.     ARGUMENT

### A.     The WDTX Action is Undoubtedly the First-Filed Action.

DynaEnergetics properly sued Yellow Jacket Oil Tools, LLC ("Yellow Jacket") in the Western District of Texas on December 4, 2020 (the "WDTX Action"), ten days before this action was filed. There is no escaping this simple and dispositive fact. Instead, in a clear attempt at forum shopping, G&H takes the irreconcilable positions that (1) the

cease-and-desist letter sent to <u>Yellow Jacket</u> by DynaEnergetics establishes a case-or-controversy sufficient to support subject matter jurisdiction over this declaratory judgment filed by <u>G&H</u>; but at the same time (2) the case filed against Yellow Jacket asserting the same patents against the same accused products is not a first-filed action.

The truth is, the WDTX Action is first-filed, venue in the Western District is proper, and there is substantial overlap between the WDTX Action and this one. This Court should, therefore, avoid needlessly duplicative litigation by preventing G&H from forum shopping and circumventing the first-filed WDTX Action against Yellow Jacket while, by G&H's own admission, it was publicly doing business as Yellow Jacket.

### 1.    Venue is Proper in the Western District of Texas.

G&H claims that it filed this suit "because the Western District of Texas lacks venue over Yellow Jacket LLC." Dkt. 27 at 4. This is untrue and every single statement made by G&H—or Yellow Jacket, represented by the same counsel—in a futile attempt to support this claim reflects its attempts to game-the-system and use a murky corporate structure to its advantage.

First, G&H asserts that "Yellow Jacket LLC does not have a 'regular and established place of business' anywhere in the WDTX." Dkt. 27 at 4-5. Untrue. Below is a photograph of the building located at 4608 S. County Road 1310, Odessa, Texas (Ex. A,[1] left) as well as an image taken from the home page of **www.yjoiltools.com** advertising Yellow Jacket's physical locations including in Odessa, Texas (Ex. B, right).

---

[1] Documents referenced as Exhibits herein are Exhibits to the Declaration of Stephanie Nguyen in Support of DynaEnergetics' Reply to Opposition to the Motion to Dismiss or, Alternatively, to Transfer to WDTX, filed contemporaneously herewith.





Located in major U.S. Oil & Gas Plays

We distribute oil tools from strategically located warehouses in major U.S. oil & gas producing regions. Chances are we're close to your operation.

G&H next asserts that "Yellow Jacket LLC does not make, use, or sell the products it has accused in the WDTX Action." Dkt. 27 at 5. Again its public representations contradict this claim. The accused product is featured prominently on the products page at **www.yjoiltools.com** as the YJOT "Pre-Wired Perforating Gun." *See* Dkt. 16-2; Dkt. 28-6. These allegations, taken as true, are more than sufficient to establish that Yellow Jacket has a regular and established place of business in the Western District. *See* Dkt. 27-7 at ¶¶3-8; Dkt. 27-5 at ¶¶3-15.

G&H does not dispute these connections between the infringement and the Western District, but instead claims it—rather than Yellow Jacket—owns the website and the building pictured above and manufactures the accused products. Dkt. 27 at 3; Dkt. 27-1 at ¶8. However, G&H holding itself out as Yellow Jacket will not defeat venue when the alter ego has the identified connections. *See Precis Grp., LLC v. TracFone Wireless, Inc.*, 2021 WL 932046, at *4-5 (W.D. Tex. Mar. 11, 2021); *Safeco Ins. Co. of Indiana v. Nidec Motor Corp.*, 2021 WL 134099, at *4 (E.D. Tex. Jan. 14, 2021).

3

2.     **The Later Addition of G&H to the WDTX Action Has No Effect on Its First-Filed Status.**

G&H believes it has played a game of "gotcha"—that DynaEnergetics fell for its trap of consistently holding itself out as Yellow Jacket in all activities relating to the infringing conduct that are discernible to the public and sued the wrong entity. However, the law is clear that a first-filed case does not lose such status when an infringer who files a declaratory judgment in another district is later added. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 184-186 (1952); *see also Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc.*, 2020 WL 1289563, *2-4 (E.D. Tex. Mar. 18, 2020), *mandamus denied*, *sub nom. In re Seattle SpinCo, Inc.*, 817 F. App'x 987, 988 (Fed. Cir. 2020); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

G&H attempts to distinguish the above cases directly addressing the application of the first-to-file rule application in the patent infringement context as irrelevant because they do not specifically address Federal Rule of Procedure 15(c) ("Rule 15(c)"). Dkt. 27 at 10. This makes little sense, given that the cited cases directly address the effect of the later joinder of an additional plaintiff in a patent infringement suit who, before being joined, had filed a declaratory judgment action in another district. *See* Dkt. 16 at 8-9. Indeed, the majority of courts analyzing the first-to-file rule do not address any Rule 15(c) analysis. *See* 5 Annotated Patent Digest (Matthews) § 37.95. A number of courts have looked at exactly this question; whether any "relation back" pursuant to Rule 15(c) must be considered in the application of the first-to-file rule. Most have concluded it does not. *See, e.g.*, *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 987-88 (N.D. Cal.

4

2011) (collecting cases).[2] "These cases are persuasive as they comport with the general liberality of Rule 15." *Id.* While the Federal Circuit has not directly addressed this question, it has acknowledged the jurisprudence described above and denied a petition for mandamus in *Wapp Tech* where the district court at issue declined to address Rule 15(c). *In re Seattle SpinCo, Inc.*, 817 Fed. Appx. 987 (Fed. Cir. 2020). Texas district courts, likewise, have not applied Rule 15(c) to the first-to-file analysis. *See Wapp Tech*, 2020 WL 1289563, at *2-4. Under this rule, G&H's argument claiming that this action is actually first filed collapses. *See* Dkt. 27 at 7-11.

### 3.  Even if Rule 15(c) Applies, DynaEnergetics' Claims Against G&H Relate Back to the Original WDTX Complaint.

Even if the Court were to undertake the relation back inquiry, as some district courts outside of Texas have concluded it should, the outcome would not change; the facts of this case are exactly the type Rule 15(c) was intended to address. Rule 15(c) allows a party to correct its pleadings—as DynaEnergetics has already done in the WDTX Action *via* its First Amended Complaint—and have that amendment relate back to the original filing as long as the original omission was not intentional and the "party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake." Fed. R. Civ. P. 15(c)(1)(C)(ii).

G&H cannot dispute that the notice requirement is met.[3] G&H, itself, relies on the

---

[2] DynaEnergetics is unaware of any Southern District of Texas case directly addressing this issue.

[3] G&H attempts to do so, but rather than challenge whether **G&H** "knew or should knew or should have known that the action would have been brought against it, but for a mistake" (Fed. R. Civ. P. 15(c)(1)(C)(ii)), it asserts that "DynaEnergetics had notice and knew the correct parties for its lawsuit at the time it filed its original complaint." Dkt. 27 at 8; *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (emphasis in original) ("Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint.").

fact that it received the cease-and-desist letter addressed to Yellow Jacket accusing the YJOT Pre-Wired Perforating Guns of infringing U.S. Patent No. 10,844,697 (the "'697 Patent") to establish subject matter jurisdiction in this action. Dkt. 1 at ¶ 10. It even quoted from that letter, but inserts G&H as the party to whom the letter was directed (*id.*)—notably the same quotes it cites in its Opposition as being directed to Yellow Jacket (Dkt. 27 at 2).[4] G&H also admits the letter was addressed to Jimmy Kash who "is the president of both G&H and Yellow Jacket Oil Tools, LLC." Dkt. 27 at 2. The same is true of the complaint in the WDTX Action; it was filed against Yellow Jacket, which is a subsidiary of G&H (Dkt. 27-8 at 1), represented by the same counsel, and has the same president (Jimmy Kash). As G&H itself has explained, "the logical conclusion is that Dyna's allegations were directed at G&H's products" (Dkt. 27-6 at 2), thus putting G&H on notice of the claims against it in the WDTX Action as of the filing of the complaint on December 4, 2020. *See Krupski*, 560 U.S. at 549, 554-556 (finding relation back appropriate where the originally omitted defendant had notice of the complaint and the tortious conduct asserted therein was carried out by the originally omitted defendant).[5]

G&H's only defense to the application of Rule 15(c) under these circumstances is its incorrect assumption that "DynaEnergetics chose to sue Yellow Jacket LLC and

---

[4] As discussed in DynaEnergetics' Motion (Dkt. 16 at 5-6), the fact that the letter was addressed to Yellow Jacket Oil Tools <u>LP</u> rather than Yellow Jacket Oil Tools <u>LLC</u> is not even worth the attention it is garnering in this footnote. It was sent to the president of Yellow Jacket (who is also the president of G&H) at an address listed on the Yellow Jacket branded website of which G&H claims ownership. Dkt. 27 at 3; Dkt. 16-4. It, therefore, reached its intended audience regardless of the typographical error concerning "LP" rather than "LLC." Moreover, G&H unabashedly points to this letter as creating the case and controversy at issue before this Court. Dkt. 1 at ¶10; Dkt. 27-6 at 2.

[5] G&H's reliance on *Emerson Process Mgmt. LLP v. Wetro Lan, LLC*, 2015 WL 11438109, at *1-2 (W.D. Tex. Sept. 2, 2015) is similarly misplaced. *See* Dkt. 27 at 10. There, the court did not find that the previous action was not first-filed, but rather that there was nothing more than attorney argument to support the relationship between the original and added party and that the convenience factors counseled against dismissal of the later action. Neither of those considerations apply here.

refused to sue G&H" purportedly for strategic reasons. Dkt. 27 at 9. This fails for several reasons. First, G&H points to the filing of this action and its January 26, 2021 letter—both of which post-date the filing of the complaint in the WDTX Action—as the basis for DynaEnergetics' knowledge that G&H and not Yellow Jacket makes the accused products. This "knowledge" has no effect on the application of Rule 15(c). The only clue G&H points to that could arguably pre-date the filing of the original complaint on December 4, 2020 is the small footer at the bottom of www.yjoiltools.com identifying Yellow Jacket as a division of G&H. However, that same footer designates all copyrights on that website as owned by "Yellow Jacket Oil Tools," again suggesting that it, rather than G&H, is carrying out the infringing conduct. This vague representation cannot establish what G&H alleges—that DynaEnergetics "knew the correct parties for [the] lawsuit at the time it filed its original complaint in the WDTX Action." Dkt. 27 at 8; *see Krupski*, 560 U.S. at 549 (explaining that if defendant was aware of the mistake, that awareness does not foreclose relation-back).

Second, there is no support—factual, logical, or otherwise—for G&H's self-serving assumption that DynaEnergetics had a strategic reason to omit G&H simply to maintain venue in WDTX based on a preference for that district to adjudicate its infringement action. Dkt. 27 at 9. This simply makes no sense. G&H asserts that it is the actual owner of the established place of business in Odessa, TX and the website advertising that location. Therefore, venue is proper in WDTX with respect to G&H as well.

Finally, G&H points to DynaEnergetics' decision to not immediately amend its

complaint in the WDTX Action after receipt of G&H's January 26, 2021 letter as evidence that its decision to omit G&H from the original complaint was deliberate. This is nonsensical. As explained above, G&H and Yellow Jacket are entirely in possession of the information regarding who manufactures the accused products. After G&H brought this second-filed action following DynaEnergetics filing suit against Yellow Jacket, DynaEnergetics wrote counsel for G&H in an attempt to clarify that it believed Yellow Jacket to be the infringing party and to request G&H to drop this SDTX Action. Dkt. 27-3. In response, G&H stopped short of affirmatively stating that Yellow Jacket played no role in the alleged infringement or that G&H was the proper defendant in the WDTX Action. *See* Dkt. 27-6. The first time G&H or Yellow Jacket actually made such a representation was in Yellow Jacket's Motion to Dismiss the WDTX Action for lack of venue. Dkt. 27-8 at 1. Shortly thereafter, rather than responding to that Motion to Dismiss, DynaEnergetics amended its complaint in the WDTX Action to add G&H as a party based on Yellow Jacket/G&H's representations. This was not DynaEnergetics "revers[ing] course" as G&H asserts. Dkt. 27 at 1. Instead it reflects DynaEnergetics finally having sufficient information and an appropriate opportunity to correct its supposed mistake; one arising entirely out of G&H's opaque corporate structure and its public holding out of Yellow Jacket Oil Tools—rather than G&H—as the party responsible for infringing DynaEnergetics' '697 Patent.

### 4. There is Substantial Overlap Between the WDTX and SDTX Actions.

G&H's argument that there is not substantial overlap as between the two pending actions is farcical. "When two actions involving nearly identical parties and closely

related patent infringement questions are filed in separate districts, . . . the general rule is that the case first filed takes priority, and the subsequently filed suit should be dismissed or transferred or stayed." *Barnes & Noble*, 823 F. Supp. 2d at 986 (quoting 14D Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Juris. § 3823 (3d ed. 2011)).[6] That is unquestionably the case here as both cases involve the same parties and are set to address whether the YJOT Pre-Wired Perforating Gun infringes the '697 Patent, the validity of the '697 Patent, and the appropriate damages to compensate for this infringement. G&H's assertions regarding variation in the parties and necessary determinations (Dkt. 27 at 11-12) are wrong for the reasons set forth in Sections II.A.1-3, above, as well as that Yellow Jacket has been added as a party to this case. *See* Dkt. 28. Thus, "the general rule favoring the forum of the first-filed case, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise" favors proceeding on these overlapping claims in the WDTX Action. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (citations omitted).

## B. There Are No Compelling Circumstances Requiring Adjudication in SDTX and the Convenience Factors Favor WDTX.

G&H has not identified any compelling circumstance that justifies or requires the adjudication of this case in SDTX over the first-filed forum in WDTX. But even setting

---

[6] To attempt to defeat this well-established rule, G&H points to *In re Telebrands Corp.*, 773 Fed. Appx. 600, 603-604 (Fed. Cir. 2016), where the Federal Circuit unsurprisingly found that one case involving patent infringement and another involving trademark and copyright infringement were found to not overlap. Dkt. 27 at 13-14. This has no bearing on the entirely overlapping claims of infringement of the '697 Patent by the YJOT Pre-Wired Perforating Gun at issue here. G&H likewise relies on *In re Echostar Corp.*, 388 Fed. Appx. 994, 995 (Fed. Cir. 2010), but its characterization is errant at best. Dkt. 27 at 14. There, the Federal Circuit rejected a request for mandamus where the district court denied dismissal based on the first-to-file rule explaining that "[w]hile the Delaware action and this case both involve the same patents, in this case, the plaintiff asserts different claims against different defendants and accuses different technology platforms." This could not be farther afield from the facts here.

aside G&H's significant burden to justify an exception to the first-to-file rule, the § 1404 convenience factors identified by G&H weigh in favor of the WDTX venue.

### 1.   G&H, Not DynaEnergetics, Bears the Burden of Justifying a Transfer Pursuant to § 1404.

First, G&H asserts that DynaEnergetics was required by law or Local Rule 7.7 to conduct a § 1404 analysis in its motion to justify the application of the first-to-file rule. Dkt. 27 at 15, n.7. This is incorrect. The Federal Circuit has made clear that conditioning the application of the first-to-file rule on the balance of factors favoring the first-filed court is improper, explaining that "unlike in an ordinary transfer analysis, the focus of the first-to-file rule is to avoid potential interference in the affairs of another court." *In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1311-12 (Fed. Cir. 2020). G&H also argues that the burden falls on DynaEnergetics to demonstrate that the WDTX is clearly more convenient. Dkt. 27 at 28. Also not true. While the plaintiff's choice of forum is given deference in a usual transfer analysis, "[t]he same deference, however, is not owed when a party is insisting on having two substantially overlapping proceedings continue at the same time before two different courts." *Nitro Fluids*, 978 F.3d at 1311-12. Therefore, G&H—as the party insisting on having the same patent infringement dispute move forward in two districts—has the burden to prove the "compelling circumstances" that warrants the exception to the first-to-file rule. *Id.* at 1311; *see also Mobility Elecs., Inc. v. Am. Power Conversion Corp.*, 2007 WL 9724768, at *3 (E.D. Tex. Oct. 10, 2007).[7] G&H cannot meet that significant burden.

---

[7] Because the first-to-file rule does not require analysis of the convenience factors and the burden to support a § 1404 transfer falls on G&H, its attempted use of Local Rule 7.7 to prohibit DynaEnergetics from responding to its own analysis of the convenience factors is misplaced.

**2.      The Private Interest Factors Are Neutral or Favor WDTX.**

**a.      The Sources of Proof Are Equally Available in WDTX.**

G&H improperly focuses on the location of its own documents and witnesses in SDTX and ignores the sources of proof that also originate in other locations (including WDTX) which must also be considered in the balance of transfer analysis. *See Konami Dig. Entm't Co. v. Harmonix Music Sys., Inc.*, 2009 WL 781134, at *3-4 (E.D. Tex. Mar. 23, 2009). For example, G&H ignores that DynaEnergetics has identified at least five employees that are based in WDTX who have relevant knowledge of the manufacture, marketing, and sales of DynaEnergetics' products that practice the asserted patent-at-issue. Ex. C, DynaEnergetics' Amended Initial Disclosures, at 4-5. In addition, many relevant documents will exist in DynaEnergetics' 74,000 square foot facility in Blum, TX, which is located in WDTX and is home to all DynaEnergetics' manufacture of its DynaStage products which practice the '697 Patent. Dkt. 27-12 at ¶¶ 6-18; Ex. C, at 8-9.

G&H also has sources of proof located in the WDTX. G&H admits it owns and operates the Yellow Jacket building located in Odessa, Texas. Dkt. 27-8 at 3. This location is used to facilitate sales and operation of the accused product in the Permian Basin region in WDTX. Ex. B, YJOT Website. In fact, G&H's only "Warehouse Manager" is based in Odessa, TX. Dkt. 16-3 at 7. Regardless, as with nearly all modern litigation—the majority of evidence in this case will be produced electronically and thus its location should be accorded little weight in the convenience analysis. *See Lincoln Imports, Ltd., Inc. v. Santa's Best Craft, Ltd.,* 2008 WL 1781020, at *2 (S.D. Tex. Apr. 16, 2008); *E. Texas Boot Co., LLC v. Nike, Inc*., 2017 WL 2859065, at *2 (E.D. Tex. Feb.

11

15, 2017). Therefore, G&H's conclusory and speculative claims regarding the location of sources of proof (Dkt. 27 at 16), should be disregarded. *See Summit 6 LLC v. HTC Corp.*, 2014 WL 4449821, at *7 (N.D. Tex. Sept. 10, 2014). Here, the sources of proof originate from multiple jurisdictions and may be accessed equally from both the SDTX and WDTX. This factor is, therefore, neutral. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 869 (E.D. Tex. 2012).

### b.      The Availability of Compulsory Process Favors WDTX.

G&H admits that "it is not a typical practice to call prior art inventors to trial in a patent case," and yet identifies a plethora of prior art inventors who just happen to "live and work in the Houston area" in a self-serving and, frankly, ridiculous attempt to bolster its position on the convenience factors regarding non-party witnesses. *See* Dkt. 27 at 17, 20. As a number of courts have previously explained, the identification of these cherry-picked prior art inventors should be afforded minimal, if any, weight in the balance of factors analysis. *See Hammond Dev. Int'l, Inc. v. Google LLC.*, 2020 WL 3452987, at *4 (W.D. Tex. June 24, 2020) ("Because prior art witnesses are very unlikely to testify (and that Google may have cherry-picked them to begin with) the Court gives their location 'minimal' weight."); *E. Texas Boot Co*, 2017 WL 2859065, at *4 ("It is highly unlikely that prior art inventors will testify at trial, therefore, the weight afforded their presence in the transfer analysis will be minimal."). This is because prior art references are understood and interpreted from the perspective of a person having ordinary skill in the art—not from the perspective of the inventor—and therefore any testimony from prior art inventors is irrelevant in a patent infringement case. *Standard Oil Co. v. Am. Cyanamid*

12

*Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).[8]

In contrast to G&H's irrelevant non-party witnesses, DynaEnergetics will likely seek testimony from third-party witnesses regarding relevant topics such as (1) the operation and features of the YJOT Pre-Wired Guns, (2) competition between DynaStage and these guns, (3) the harm to DynaEnergetics caused by lost sales caused by this competition, and (4) the non-obviousness of the '697 Patent including industry praise and commercial success. Ex. C, DynaEnergetics' Amended Initial Disclosures. These third-party witnesses will likely be from wireline companies who actually use DynaEnergetics' products and the infringing products in the Permian Basin, the most active gas shale in the U.S. Ex. D, Permian Basin Article. Because these witnesses are likely based near the Permian Basin in WDTX, they are outside of the subpoena power of the SDTX to testify at trial. Ex. E, Permian to Galveston Distance. Accordingly, the availability of the compulsory process weighs in favor of the WDTX.

> ### c.     The Cost and Convenience of Attendance for Willing Witnesses Are the Same.

The SDTX and WDTX are neighboring jurisdictions, where Houston, TX and Waco, TX are separated by less than 200 miles, and therefore the difference of convenience and cost for G&H employees to travel between Galveston and Waco is negligible, particularly when considering G&H employees must travel nearly three times the distance to get to G&H's other Texas corporate location in Odessa, TX. Ex. F, Houston to Waco Distance; Ex. G, Houston to Odessa Distance. The mere fact that G&H

---

[8] To the extent testimony is needed from these prior art inventors, the correct inquiry is whether G&H "might be inconvenienced by having to rely on depositions as opposed to live attendance at trial." *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014). It would not.

has identified employee witnesses in SDTX does not make this district more convenient, because DynaEnergetics has also identified multiple employee witnesses in WDTX. *See* Ex. C, at 4-5, 7; *B.E. Tech., LLC v. Amazon Digital Servs., Inc*., 2013 WL 3807820, at *6 (W.D. Tenn. July 19, 2013) (finding that numerical advantages would not be considered and a single witness in the plaintiff's chosen forum was sufficient to render the factor neutral). Because § 1404(a) provides for transfer to "a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," distance of travel for employee witnesses does not weigh in favor of either SDTX or WDTX. *Id.*

### 3. The Public Interest Factors Dictate That This Case Must Remain in WDTX.

#### a. Judicial Economy Heavily Favors the WDTX Action.

Judicial efficiency weighs heavily in favor of dismissing or transferring this action to the WDTX. There is no compelling reason these actions involving the same claims, parties, patent, and accused products should run concurrently. G&H's insistence in having this case move forward needlessly wastes valuable time and resources for this Court, particularly where three other actions asserting the '697 Patent are currently pending before Judge Albright.[9] In addition to the efficiency of having all of the patent infringement cases overseen by the same judge and having a consistent ruling on common issues like claim construction, infringement, validity, and damages, G&H will also benefit from Judge Albright's Order Governing Proceedings for Patent Cases

---

[9] While there are two other patent cases pending in this district filed by DynaEnergetics and asserting infringement of the '697 Patent, it would be needlessly burdensome and complicated to attempt to align and combine a declaratory judgment action with two patent infringement cases that are overseen by different judges in the SDTX (in Houston). Importantly, G&H did not suggest that this action could be consolidated (or whether G&H would even support such a consolidation) with the other pending SDTX cases to actually support judicial efficiency.

requiring that most discovery is stayed until the Markman hearing—which is consistent with the same discovery plan schedule that G&H requested in the Case Management Plan. Ex. H, Order Governing Proceedings; Dkt. 23 at 5. G&H even admits that "patent cases generally get to trial faster in the WDTX," which serves the interest of both parties to get the quickest resolution of the issues. Dkt. 27 at 28. Accordingly, the efficiencies served to the judicial economy weighs heavily in favor of in dismissing or transferring this action to WDTX.[10]

#### b. The WDTX has a Significant Interest in the Outcome of this Action.

The WDTX has an interest in resolving this patent dispute (1) involving the YJOT Pre-Wired Perforating Gun manufactured, distributed, sold, and/or offered for sale to customers for use throughout the Permian Basin, which is primarily located within the WDTX; and (2) adjudicating this case on behalf of DynaEnergetics, who manufactures all of its competing DynaStage products in the WDTX.

\* \* \* \* \*

G&H has not identified any compelling circumstance that warrants an exception to the first-to-file rule and for maintaining this case in SDTX.

### III.   CONCLUSION

For the reasons set forth in its Motion as well as herein, DynaEnergetics respectfully moves this Court to decline to exercise jurisdiction over this action.

---

[10] G&H asserts that the judicial economy is best served by staying in SDTX because DynaEnergetics cannot establish venue over defendant Yellow Jacket in WDTX. Dkt. 27 at 23-24. As discussed in Section II.A.1 above, G&H is wrong. Also as discussed in Section II.A, even if Yellow Jacket is not the party that carries out the acts of infringement with respect to the YJOT Pre-Wired Perforating Guns, G&H has been added to that suit and G&H admits that it has a regular and established place of business in that jurisdiction. Dkt. 27-8 at 3.

Dated: March 19, 2021

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: */s/ Barry J. Herman*
Barry J. Herman (*pro hac vice*)
Maryland Federal Bar No. 26061
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com

*Attorney-in-Charge for Defendants DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.*

OF COUNSEL:

WOMBLE BOND DICKINSON (US) LLP
Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com

WOMBLE BOND DICKINSON (US) LLP
Stephanie M. Nguyen (*pro hac vice* to be filed)
DC Bar No. 1046300
Julie C. Giardina (*pro hac vice* to be filed)
Maryland Federal Bar No. 21085
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5873
Email: Stephanie.Nguyen@wbd-us.com
Telephone: (410) 545-5802
Email: Julie.Giardina@wbd-us.com

MOYLES IP, LLC
Lisa J. Moyles (*pro hac vice* to be filed)
Connecticut State Bar No. 425652
Jason M. Rockman (*pro hac vice* to be filed)

New York Bar No. 4450953
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

RUSTY HARDIN & ASSOCIATES, LLP
Megan C. Moore
Federal Bar No. 963966
Texas Bar No. 24054322
Terry Kernell
Federal Bar No. 15074
Texas Bar No. 11339020
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Email: mmoore@rustyhardin.com
Email: tkernell@rustyhardin.com

*Attorneys for Defendants DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

*/s/ Barry J. Herman*