1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
2                        GALVESTON DIVISION

3

    G&H DIVERSIFIED              §     3:20-CV-00376
4   MANUFACTURING, LP            §
                                 §
5   V.                           §     9:49 A.M. TO 10:07 A.M.
                                 §
6   DYNAENERGETICS EUROPE        §
    GMBH, ET AL                  §     MARCH 11, 2021
7
                     INITIAL CONFERENCE VIA VIDEO CONFERENCE
8                   BEFORE THE HONORABLE ANDREW M. EDISON
                            Volume 1 of 1 Volume
9

10  APPEARANCES:   (All parties appeared via video conference)

11
    **FOR THE PLAINTIFF:**
12  Mr. Amir H. Alavi
    Mr. Steven Thomas Jugle
13  Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C.
    1221 McKinney Street, Suite 2500
14  Houston, Texas  77010-2009
    (713) 655-1101
15
    **FOR THE DEFENDANTS:**
16  Mr. Terry D. Kernell
    Rusty Hardin & Associates, LLP
17  1401 McKinney Street, Suite 2250
    Houston, Texas  77010
18  (713) 652-9000
        and
19  Mr. Barry Jeff Herman
    Ms. Stephanie Nguyen
20  Womble, Bond & Dickinson
    100 Light Street, 26th Floor
21  Baltimore, Maryland 21202
    (410) 545-5830
22      and
    Mr. Preston H. Heard
23  Womble, Bond & Dickinson
    271 17th Street NW, Suite 2400
24  Atlanta, Georgia 30363
    (404) 888-7366
25

1    **APPEARANCES:   (continued)**

2    Court Reporter:
     Laura Wells, RPR, RMR, CRR
3    515 Rusk Street, Suite 8004
     Houston, Texas 77002
4
     Proceedings recorded by mechanical stenography.
5    Transcript produced by computer-assisted transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **(The following proceedings held via video conference.)**

2         THE COURT:  And last but not least, and

3    definitely not least, Case Number 3:20-CR-376, G&H

4    Diversified Manufacturing, LLP v. DynaEnergetics Europe.

09:49:48   5    Who do we have, starting with the plaintiff, please?

6         MR. ALAVI:  Good morning, Your Honor.  This is

7    Amir Alavi with AZA for the plaintiff.  I have with me, on

8    Zoom, Steven Jugle from the firm as well.

9         MR. JUGLE:  Good morning, Your Honor.

09:49:52   10        THE COURT:  Good morning to both of you.

11    And for the defendants?

12        MR. KERNELL:  Good morning, Your Honor.  This is

13    Terry Kernell.  With me on the hearing and throughout the

14    hearing this morning is Preston Heard, Barry Herman, and

09:50:13   15    Stephanie Nguyen.  We are acting as local counsel.  They

16    are, respectively, in Atlanta and in Maryland with the

17    firm of Womble, Bond & Dickinson.  And if everything goes

18    according to plan, I have now said everything that I will

19    be saying during the hearing.

09:50:45   20        THE COURT:  You did a great job, Mr. Kernell.

21    Good to see you.  It's been a long time.

22        MR. KERNELL:  It has.  It has.  I see we go to

23    the same hair colorist.

24        THE COURT:  I didn't realize you were as young as

09:50:48   25    I am.  Apparently you didn't read the tie memo, but I'm

1    glad to see everyone else did.

2         MR. KERNELL:  Well, I did but -- anyway, go

3    ahead.

4         THE COURT:  Okay.  Obviously, a patent

09:51:03   5    infringement case.  Let me start with the unopposed motion

6    for extension of time to support -- basically, a week

7    extension, Docket Entry 29.  I'll sign that order today or

8    right now.  I was just looking at the docket sheet to see

9    if Judge Brown beat me to the punch.  So we'll get that

09:51:25   10   signed, and you'll be well on the way there.

11        So, I guess, here is my question.  I have the two

12   drafts y'all sent to me from each side.  I'll just be

13   honest.  I'm not sure what I should do with it.  Like,

14   every other time I have been involved in patent cases, the

09:51:48   15   parties get together and agree to the dates.  And so --

16   I'm just being as candid as I can -- you know, when

17   someone says, hey, you know, set this deadline 15 weeks

18   after and someone sends it and says do it and put 11 weeks

19   after, how do I make a decision?  Do I just split the

09:52:05   20   difference?  I mean, what do I do?  Because I want to put

21   together a schedule that the parties want to agree to.  It

22   just sounds -- I mean, I'm just -- I am at a loss.

23        MR. ALAVI:  Your Honor, this is Amir Alavi on

24   behalf of the plaintiff.  Maybe I can clarify it just a

09:52:20   25   little bit.  The difference between the two parties'

1  orders, there is really a substantive difference and then

2  just a form difference.

3      The substantive difference is the plaintiff -- and, by

4  the way, we're a declaratory judgment action plaintiff.

09:52:38  5  So the defendants are patent owners.  They have now filed

6  their counterclaims and added parties of patent

7  infringement.

8      Our position as the -- I guess the defendant in the

9  counterclaim is that factual discovery should be stayed

09:52:53  10  until the *Markman* hearing.  And, you know, Judge Eskridge

11  did that in a recent patent case.  The theory behind it is

12  that these cases can get very expensive very quickly on

13  discovery.  The *Markman* order, as you know, is the

14  critical order that helps the parties understand the scope

09:53:14  15  of the patent which can either keep the case expansive or

16  limit it.

17      So if you look at all the proposed dates, that's the

18  difference, substantively, between the parties.  We have

19  asked for a stay of discovery.  And so, we have added,

09:53:30  20  essentially, eight weeks to all the deadlines after the

21  *Markman*.  So if the Court is not going to stay discovery,

22  you can simply enter the defendants' proposed scheduling

23  order because we don't object to that, other than the

24  concept of the stay of discovery.

09:53:44  25      If you are going to stay discovery, we had proposed

1    adding eight weeks.  You may say that's too much time.

2    You may say that's too little time.

3         The other difference -- and I apologize for this -- on

4    our side.  So if you look at the defendants' proposal,

09:53:59    5    they give you actual dates after the *Markman* order.  So if

6    you look at their column, they track the -- this Court

7    scheduling order and they actually fill in the dates.

8         We don't fill in the dates.  And the only reason we

9    did that was to have a discussion with the Court about

09:54:14    10    whether you want us to after the *Markman* order.  The

11    scheduling order calls for the *Markman* order to be issued

12    six weeks after the hearing.  Sometimes that happens.

13    Sometimes it doesn't.

14         And so, we're comfortable with a floating set of dates

09:54:29    15    after the *Markman*, which gives us a little bit of

16    flexibility so we don't have to come back and ask the

17    Court to change any of the dates.

18         If the Court doesn't prefer that and you say, "No.  I

19    want the dates in there I have told you in your scheduling

09:54:41    20    order.  If I issue my *Markman* a little bit later, you can

21    come and ask for deviations," we are also happy to enter

22    the dates.

23         So those are, I think, the two big differences.  One

24    is substance and one is the form that we didn't fill in

09:54:55    25    the dates because we wanted to talk to you about having

1    potentially floating dates for the post-*Markman*.

2          THE COURT:  Understood.  And let me say this.  On

3    the dates issue, you know, at least right now, Judge Brown

4    is going to handle.  He might refer to me, as he has done

5    before, the *Markman* hearing.  But you know -- although I

6    do like the idea of telling him he has got to issue a

7    ruling within a certain amount of time, I'm not sure

8    that -- you know, it's one thing if I was handling it, I

9    could tell you I would be done by a certain date.

10         Let me ask, I guess Mr. Herman, what is your view on

11   the discovery stay issue?

12         MR. HERMAN:  Thank you, Your Honor.  First of

13   all, I have been in Houston federal court several times,

14   never in Galveston.  What a beautiful courthouse from the

15   photographs, and I think you would be a very entertaining

16   and informative and a great judge; but you are not the

17   right judge for this case because this case should be

18   going forward in front of Judge Albright in the Western

19   District of Texas.

20         THE COURT:  I totally understand.  You know, let

21   me say this.

22         MR. HERMAN:  And in all honesty -- yes.  Go

23   ahead.

24         THE COURT:  Your point is well taken.  And,

25   obviously, that motion has got to be decided.  I mean, let

1   me say this:  That motion, if the motion is granted, Judge

2   Albright will handle it; and we'll never hear -- we will

3   never hear from this again.  If it's denied, then we go

4   forward here.

09:56:15   5   I simply want to make sure I put a schedule in place.

6   Which it is sort of our standard practice that I have got

7   a schedule in place to cover all this.

8   MR. HERMAN:  That is fine, Your Honor.  And I

9   think litigants use the word "irony" too often; but it's

09:56:29   10   incredibly ironic that Mr. Alavi, who is a very

11   sophisticated patent lawyer, is suggesting that you adopt

12   Judge Albright's practice, since Judge Albright in Waco is

13   bifurcating, if you will.  He has no real discovery,

14   except for jurisdictional discovery, until the *Markman*

09:56:48   15   hearing.  But that's not the standard in the Southern

16   District of Texas under any circumstance.

17   And so if this case is going to go forward in front of

18   you or Judge Brown, we don't see any reason to deviate

19   from the normal discovery procedures, which is a

09:57:03   20   full-blown discovery.  If the case is going to go forward

21   in front of Judge Albright, then Mr. Alavi will have the

22   schedule, basically, that he is suggesting you adopt.

23   So from our perspective, Your Honor, we don't know --

24   if you want to enter a schedule, obviously, that's your

09:57:21   25   prerogative.  We would suggest that you just wait until

1   after the briefing, after the hearing, or however the

2   motion to dismiss is going to be decided, and then enter a

3   schedule there as the case goes forward.  I don't know --

4           THE COURT:  Let's say we did that.  Let's say we

09:57:38   5   did that.  And then, if I did that and it stays here in

6   Galveston, then what?  Then what is -- then are we going

7   to have a fight over which of your two schedules to put in

8   place?

9           MR. HERMAN:  I think if the case stays here in

09:57:50   10   Galveston, there would then be -- I guess there still will

11   be a dispute about which schedule should go forward, yes.

12           THE COURT:  So, Mr. Alavi, isn't the first issue

13   we should decide whether to stay here or go?

14           MR. ALAVI:  I don't think so, Your Honor.  If you

09:58:17   15   decide to keep the case, for example, it's better for us

16   to have the schedule in place now.  We have had the

17   scheduling conference.

18       If you decide to transfer the case, which I don't

19   think you are going to do, all the parties are based in

09:58:29   20   the Southern District of Texas --

21           THE COURT:  By the way, it's amazing how

22   confident both sides are on their positions on this issue.

23   The greatest motion.  It's the most ridiculous motion.

24   I'm with you.  I hear you.

09:58:41   25           MR. ALAVI:  Well, I'm not using those -- I'm not

1   using pejoratives.  I think, ultimately, when you decide

2   it and you see that everyone is based in Houston, you are

3   going to keep the case in the Southern District of Texas.

4   But if you -- if you just play it out, if you deny the

09:58:53   5   motion, it's better for us to have a schedule because we

6   can proceed and not have to have another scheduling

7   conference and have these dates in front of us.

8         If you transfer the case, the schedule goes away

9   anyway; and Judge Albright enters a schedule.  But the

09:59:07   10   parties benefit from moving forward on certain aspects of

11   the case while you are deciding the venue motion because

12   that work will be beneficial wherever the case is.  For

13   example, an exchange of *Markman* terms and the *Markman*

14   process.

09:59:23   15         With respect to the stay on discovery, we had this

16   issue with Judge Eskridge in the Southern District

17   recently in a case that we handled.  It is entirely within

18   your discretion how you handle discovery in these cases.

19   There is -- there is no standard practice.  It depends on

09:59:40   20   the judge.  And so we --

21         THE COURT:  I understand.

22         MR. ALAVI:  We argue as --

23         THE COURT:  Mr. Herman, you -- I mean, I assume

24   you want -- would you want to do discovery while the

09:59:53   25   decision on whether to transfer the case is pending or are

1   you saying wait until the -- issue the decision and then

2   conduct discovery?

3           MR. HERMAN:  Your Honor --

4           MR. ALAVI:  Our position on this -- to answer the

5   question, Judge, our position on the discovery is that the

6   discovery should be stayed until the *Markman*.

7           THE COURT:  No.  No.  I'm with you.  I'm with

8   you.  I was asking Mr. Herman.

9           MR. ALAVI:  Oh, I'm sorry.  I thought you were

10  asking me.  I apologize.

11          THE COURT:  No.  No.

12          MR. HERMAN:  Your Honor, if the case is going to

13  go forward in the Southern District of Houston, then we

14  want to conduct discovery.

15      If the case is going to go forward in front of Judge

16  Albright in Waco, then we're going to follow his schedule

17  and the way he does things.

18          THE COURT:  But let me re-ask this again.  So

19  let's say there is no decision for five weeks on --

20  hypothetically, for five weeks or six weeks on the motion

21  to transfer venue.  Do you want to conduct discovery in

22  those six weeks or are you willing to wait until Judge

23  Brown issues a ruling on the venue and then you want to

24  pursue discovery, understanding that Mr. Alavi's position

25  is no discovery until the *Markman* hearing?

1        MR. HERMAN:  Yeah.  Under those circumstances,

2    Your Honor, we would be willing to wait until the motion

3    to dismiss or transfer has been heard -- has been decided.

4    So we're okay with foregoing discovery until a decision is

10:01:08   5    made whether the case is going to go forward in the

6    Southern District or in the -- in Waco.

7        THE COURT:  So let me ask this.  At least for the

8    time being, what if I do this.  What if I set some --

9    well, do you -- is there any reason not to set the first

10:01:28  10    few deadlines here on the scheduling order?  I mean, sort

11    of the disclosure of asserted claims.  You are going to

12    have to do that no matter where you are, right?

13        MR. ALAVI:  That's correct, Your Honor.  And we

14    don't have a disagreement on those dates, that I think the

10:01:47  15    dates that are proposed by both sides simply follow the

16    Court's schedule through --

17        THE COURT:  Right.  So here is what I'm thinking.

18    Why don't I just do those dates?  Because that goes

19    through June.  And then, if Judge Brown sends the case to

10:02:04  20    Judge Albright, you are there.

21        If he doesn't, then I can just call a quick

22    conference.  You know, you guys confer and see if you can

23    agree to a schedule and then we can just call a quick

24    conference to set up sort of a revised schedule.  Because

10:02:17  25    it all, to me, sort of depends on when he has that -- when

1   he makes that decision.

2           MR. HERMAN:  Your Honor, could I -- could I ask

3   my colleague, Mr. Heard, to address that just because he

4   was looking at the dates and is familiar with it?

10:02:30   5           THE COURT:  Absolutely.  Absolutely.

6           MR. HEARD:  And, Your Honor, those dates are

7   fine.  As Mr. Alavi alluded to, we will have to do them in

8   either jurisdiction, and we're prepared to move forward on

9   them.  So I think your proposal makes sense.

10:02:44   10          MR. ALAVI:  Your Honor, I would ask Mr. Heard one

11  question, if I may, which is I do think that the

12  defendants had a request that some initial damage

13  disclosures be delayed if discovery didn't commence

14  immediately.

10:03:03   15      And so, Your Honor, I think that they may -- given

16  that you are talking about perhaps staying discovery until

17  the motion to transfer venue is decided, they may still

18  want that particular deadline moved.  And we told them

19  that we would not oppose that because, of course, if they

10:03:20   20  don't have discovery, they can't do those initial damage

21  calculations.

22          THE COURT:  Let's do this.  I want to -- it's

23  sort of -- I mean, it's unusual but, you know, it is a

24  patent infringement case.  So I am going to stay discovery

10:03:34   25  until you get a ruling on the motion to transfer venue.

1 But I do want to put an order in place, at least with the

2 dates you all have agreed on.

3     Would you just -- after this hearing, would you confer

4 and then just shoot an e-mail to my case manager to let me

10:03:46  5 know which dates -- I mean, it looks like the first four

6 can be agreed to -- but to give you an opportunity to

7 think about it or if you need to address it, you know, to

8 make sure we are all on the same page.

9     MR. ALAVI:  We can do that on the dates, Your

10:03:57 10 Honor.  May I get a clarification on the discovery stay?

11     THE COURT:  Certainly.

12     MR. ALAVI:  So the request that we had made was

13 to stay non-*Markman* discovery because we may want to

14 proceed with *Markman* discovery since you are going to

10:04:11 15 enter dates that lead to *Markman*.

16     And then, the second piece is we did want to pursue

17 and we talked to the DynaEnergetics lawyers about pursuing

18 what is called system art discovery, which is prior art

19 that's a system and not published --

10:04:23 20     THE COURT:  Right.

21     MR. ALAVI:  -- because we think it's relevant to

22 the *Markman*.  And so we would like to be able to pursue

23 that through, at least the subpoena phase, to the system

24 owners, primarily Schlumberger, to start that ball rolling

10:04:40 25 because it will take a while for them to, you know, file

1    their objections, et cetera, et cetera.

2             THE COURT:  I understand.  Mr. Herman and

3    Mr. Heard, you don't have an objection to that, do you?

4             MR. HERMAN:  Your Honor, it seems like Mr. Alavi

10:04:53  5    wants to have his cake and eat it, too.  But for the

6    interest of just getting through this initial scheduling

7    conference, we can agree to it.

8             THE COURT:  Okay.

9             MR. HERMAN:  We want this case to proceed.

10:05:03  10   Right.  We are the plaintiff.  We want to get to trial

11   faster.

12            THE COURT:  I understand.  You just -- you want

13   it to proceed.  You just want it to proceed before Judge

14   Albright and not here.  That's fine.  There is no

10:05:10  15   criticism there.  That's obviously -- okay.

16        Well, then, do me a favor.  Since you all are at least

17   agreed on that, get together and make sure you have the

18   dates.  If there is something you want me to put in the

19   order, I want to make sure I have the language clear that

10:05:23  20   both parties have agreed to on what discovery can't go

21   forward and can go forward, at least for the time being,

22   and make it clear I'm not ruling on the ultimate issue of

23   whether discovery is generally -- you know, should be

24   stayed up till after the *Markman* hearing in general.

10:05:38  25   That's -- we'll address both sides' views on that, if we

1   get to that point in the case.

2           MR. HERMAN:  Thank you, Your Honor.

3           MR. ALAVI:  Thank you, Your Honor.  I have three

4   questions for you, Your Honor.  The first two are

10:05:50   5   combined, which is what would you like us to do about the

6   agreed discovery order, which lays out the scope of

7   discovery, and the agreed --

8           THE COURT:  So the agreed discovery order, you

9   are agreed on it, right?

10:06:03   10          MR. ALAVI:  That's the last I heard.  I just want

11  to make sure, given the -- your current ruling may have

12  changed that, with respect to the parties.  So I don't

13  want to presume that we are still agreed because we

14  anticipate it --

10:06:14   15          THE COURT:  Let me say this.  If you are agreed

16  on it, I'm going to sign it.  Okay.  So I was about to

17  sign it.  I just wanted to have this conference.  Do me a

18  favor, given what we've just talked about, you get

19  together.  If you are agreeable on it, just let me know in

10:06:28   20  the e-mail to Mr. Bostic; and I'll sign the agreed order.

21      With respect to the protective order, I will tell you

22  exactly.  My view is that I'm going to sign the protective

23  order the way it's usually done in the Southern District

24  of Texas and, at least for the time being, not include the

10:06:43   25  prosecution bar.  Just -- so that's what I'm going to do

1   on that, at least for the time being.

2        MR. ALAVI:  And, Your Honor, that should -- if

3   that becomes an issue, should we raise that through the

4   letter brief process, the discovery issue?

10:06:56   5        THE COURT:  Yes.

6        MR. ALAVI:  Thank you, Your Honor.

7        THE COURT:  Okay.  Then if you don't mind, if you

8   could, by the end of the day, hopefully, get back with

9   Mr. Bostic because I do want to enter that schedule.  But

10:07:06   10   I greatly appreciate it.  Sorry it took so long.  You were

11   at the end.  But I'm glad we got it done and great to see

12   all of you again.  And Judge Brown and I look forward to

13   working with you.  Obviously, some of you want to work

14   with us longer than others, and I fully understand that.

10:07:24   15   We will see you and base it on the papers and argument.

16   So best of luck.  Thank you very much.  You are excused.

17        ALL COUNSEL:  Thank you, Your Honor.

18        THE COURT:  And that concludes the initial

19   scheduling conferences for Thursday the 11th of March,

10:07:42   20   2021.

21        (Proceedings concluded at 10:07 a.m.)

22            *******************

23

24

25

1  *Date:  April 23, 2021*

2  **COURT REPORTER'S CERTIFICATE**

3  *I, Laura Wells, certify that the foregoing is a*

4  *correct transcript from the record of proceedings in the*

5  *above-entitled matter.*

6  _____/s/ Laura Wells_____

7  *Laura Wells, CRR, RMR*